#25766-rev & rem-DG

**2012 S.D. 56**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STERN OIL COMPANY, INC.,                    Plaintiff and Appellee,

 v.

JAMES R. BROWN d/b/a EXXON
GOODE TO GO and FREEWAY MOBIL,          Defendants and Appellants.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE KATHLEEN CALDWELL
Judge

\* \* \* \*

MICHAEL D. BORNITZ
WILLIAM D. SIMS of
Cutler & Donahoe, LLP
Sioux Falls, South Dakota                Attorneys for plaintiff
                                          and appellee.

MATTHEW S. McCAULLEY
ROCHELLE R. SWEETMAN of
Murphy, Goldammer &
 Prendergast, LLP
Sioux Falls, South Dakota
 and
RONALD A. PARSONS, Jr. of
Johnson, Heidepriem & Abdallah, LLP
Sioux Falls, South Dakota                Attorneys for defendants
                                          and appellants.

\* \* \* \*

ARGUED AUGUST 23, 2011
REASSIGNED APRIL 24, 2012

OPINION FILED **07/03/12**

#25766

GILBERTSON, Chief Justice (on reassignment).

[¶1.] Stern Oil argues that James Brown contracted to purchase a minimum amount of fuel for his two convenience stores from Stern Oil for a ten-year period. When Brown notified Stern Oil that he would no longer purchase its fuel, Stern Oil initiated this breach of contract action. Brown filed a counterclaim, alleging fraudulent inducement. The circuit court granted Stern Oil's motion for summary judgment on both the breach of contract claim and on Brown's counterclaim, but the issue of damages proceeded to trial.[1] After a court trial, the circuit court awarded Stern Oil eight years of lost profits. We reverse the circuit court's grant of summary judgment.

## FACTS

[¶2.] Brown farms near Gettysburg, South Dakota, and has owned interests in several businesses. In late 2004, he acquired and redesigned two convenience stores on opposite sides of Exit 2 on Interstate 29 in North Sioux City, South Dakota. Stern Oil, a fuel distributor for Exxon Mobil Corporation (ExxonMobil), contacted Brown while he was remodeling the properties. Although Brown was negotiating with another fuel distributor, he ultimately elected to do business with Stern Oil. One convenience store was branded Exxon Goode To Go, and the other was branded Freeway Mobil.

[¶3.] In October 2005, Brown and Stern Oil executed a Motor Fuel Supply Agreement (MFSA) for each of Brown's two convenience stores. Each MFSA listed

---

1. This portion of the opinion was tried by the Honorable Bradley G. Zell.

the maximum volume of fuel that Stern Oil was obligated to offer to sell to Brown each year. The maximum annual volume for the first contract year at Freeway Mobil was 1.38 million gallons of gasoline, and the maximum annual volume for the first contract year at Exxon Goode To Go was 1.5 million gallons of gasoline and 720,000 gallons of diesel. After the first contract year, the maximum annual volume of fuel was adjusted each year based on sales volume.[2] Brown was obligated to purchase at least seventy-five percent of the maximum annual volume of fuel. If Brown failed to purchase the minimum amount of fuel that the MFSAs required, Stern Oil had the option to terminate the agreements or refuse to renew them.

[¶4.] The MFSAs also briefly addressed the price of the fuel that Brown was required to purchase from Stern Oil:

> Unless otherwise specified, all prices shall include applicable taxes, and are subject to change by [Stern Oil] at any time and without notice. All prices are payable in cash in U.S. dollars at time of delivery, or other payment terms as [Stern Oil] may specify, except to the extent credit is extended on such terms and conditions as [Stern Oil] may determine in its sole discretion.

Stern Oil faxed and emailed Brown a fuel price sheet each business day. The price sheet listed the rack price of the various types of fuel that Brown could purchase;

---

2. Section 4(b) of both MFSAs provides:

> For each month of the remaining contract years, the Maximum Monthly Volume for the current month shall be the greater of actual volume in the prior month or actual volume in the current month of the prior year purchased by [Brown] from [Stern Oil]. The Maximum Annual Volume for the current contract year will be the sum of the Maximum Monthly Volumes in the current contract year.

the applicable federal and state taxes and fees; and Stern Oil's markup, delivery, and freight charges.[3] By adding the additional fees and charges to the rack price, the price sheet listed the total price of the various types of fuel Brown could purchase from Stern Oil.

[¶5.]        Under a brand incentive program, Brown and Stern Oil also executed a Repayment Agreement (BIP) for each of Brown's two convenience stores. The BIPs provided that Stern Oil would reimburse Brown for the costs of certain improvements to his convenience stores. Stern Oil thus assisted Brown in designing the layouts of his stores and equipping the stations with ExxonMobil-approved fuel dispensers and payment systems. The BIPs gave Stern Oil the option of reimbursement in the event of Brown's breach or default:

> [I]n such event, at [Stern Oil's] option, any and all Improvement Costs expended, reimbursed, or otherwise provided to [Brown] by [Stern Oil] or [ExxonMobil], either directly or indirectly, shall become immediately due and payable from [Brown] to [Stern Oil] (the "Repayment Amount") . . . .

[¶6.]        When Brown notified Stern Oil that he would no longer purchase its fuel, Stern Oil initiated this breach of contract action. Brown filed a counterclaim, alleging that Stern Oil fraudulently induced him to enter into the MFSAs and the BIPs by verbally guaranteeing a five-cent profit on every gallon of fuel he sold. Brown claimed that Stern Oil's prices were so high that he was unable to make a profit on the sale of fuel at his convenience stores. Stern Oil moved for summary judgment on its breach of contract claim and on Brown's fraudulent inducement

---

3.     The "rack price" is the price ExxonMobil charges Stern Oil for fuel at its terminals.

counterclaim. The circuit court granted Stern Oil's motion for summary judgment on both claims. It concluded that a breach of contract occurred as a matter of law but left the issue of damages for trial. Brown then filed a motion for reconsideration, which, following a hearing, the circuit court denied.

[¶7.] The issue of damages proceeded to trial in October 2009 and January 2010. The circuit court awarded Stern Oil eight years of lost profits in the amount of $925,317. A judgment in that amount plus prejudgment interest was entered against Brown in August 2010. The circuit court later added attorneys' fees and taxable and non-taxable disbursements to the original judgment. Brown moved for a new trial, but his motion was deemed waived. Brown appeals.

## ANALYSIS

[¶8.] A grant of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." SDCL 15-6-56(c). Thus, "[t]his Court reviews a grant of summary judgment to determine whether the moving party has demonstrated the absence of any genuine issue of material fact and entitlement to judgment on the merits as a matter of law." *Tolle v. Lev*, 2011 S.D. 65, ¶ 11, 804 N.W.2d 440, 444. "All reasonable inferences drawn from the facts must be viewed in favor of the non-moving party." *Id*. Yet, "the party challenging summary judgment must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Id*.

[¶9.] "Summary judgment is not the proper method to dispose of factual questions." *Bozied v. City of Brookings*, 2001 S.D. 150, ¶ 8, 638 N.W.2d 264, 268. "Summary judgment is an extreme remedy, [and] is not intended as a substitute for a trial." *Discover Bank v. Stanley*, 2008 S.D. 111, ¶ 19, 757 N.W.2d 756, 762. "However, on appeal this Court will affirm the circuit court's ruling granting a motion for summary judgment if any basis exists to support the ruling." *Id.*

*Fraudulent Inducement Claim*

[¶10.] Because the MFSAs were primarily agreements for the sale of goods, South Dakota's version of the Uniform Commercial Code (UCC), which is codified in Title 57A of the South Dakota Code, governs the dispute in this case. *See* SDCL 57A-2-102.[4] The parol evidence rule is set forth under SDCL 57A-2-202. At the time of the court trial on Stern Oil's motion for summary judgment, SDCL 57A-2-202 provided:

> Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented
> (a)     By course of dealing or usage of trade (§ 57A-1-205) or by course of performance (§ 57A-2-208); and

---

4.     SDCL 57A-2-102 provides:

> Unless the context otherwise requires, this chapter applies to transactions in goods; they do not apply to any transaction which although in the form of an unconditional contract to sell or present sale is intended to operate only as a security transaction nor does this chapter impair or repeal any statute regulating sales to consumers, farmers or other specified classes of buyers.

> (b)     By evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

SDCL 57A-2-202 (2008).

[¶11.]       We have recognized an exception to the parol evidence rule when evidence is introduced to establish fraud as a ground for rescinding a contract. As we explained in *Sabbagh v. Professional & Business Men's Life Insurance Co.*,

> [i]t is well established that, as fraud vitiates everything which it touches, parol evidence is always admissible to show, for the purpose of invalidating a written instrument, that its execution was procured by fraud, or that, by reason of fraud, it does not express the true intentions of the parties. The rule in this respect is not rendered inapplicable by the fact that the writing contains a recital to the effect that all agreements between the parties are contained therein . . . .

79 S.D. 615, 629, 116 N.W.2d 513, 520 (1962) (quoting 32 C.J.S. *Evidence* § 979). This "fraud exception" to the parol evidence rule applies to contracts governed by the UCC. *See* 1 James J. White & Robert S. Summers, *Uniform Commercial Code* § 2-11 (5th ed. 2006) (recognizing an exception to the parol evidence rule when a party seeks to rescind a contract governed by the UCC on the basis of fraud); SDCL 57A-1-103(b) ("Unless displaced by the particular provisions of this title, the principles of law and equity, including . . . the law relative to . . . fraud[ ] [and] misrepresentation, . . . supplement its provisions.").

[¶12.]       In this case, Brown sought to rescind the MFSAs and the BIPs by introducing evidence that Stern Oil fraudulently induced him to enter into the agreements by verbally guaranteeing a five-cent profit on every gallon of fuel he sold. The circuit court concluded that the parties' negotiations and the alleged

- 6 -

verbal guarantee were inadmissible parol evidence. Without the evidence of the alleged verbal guarantee, the circuit court held that Brown's fraudulent inducement claim failed as a matter of law. However, under the fraud exception to the parol evidence rule, this evidence is not barred and the circuit court incorrectly invoked the parol evidence rule. We will affirm a grant of summary judgment "only if all legal questions have been decided correctly." *Muhlbauer v. Estate of Olson*, 2011 S.D. 42, ¶ 7, 801 N.W.2d 446, 448. Therefore, because the circuit court incorrectly decided a legal question in this case—whether the parol evidence rule barred evidence supporting Brown's fraudulent inducement counterclaim—we cannot affirm its grant of summary judgment.

[¶13.]    In addition, whether Stern Oil fraudulently induced Brown to enter into the agreements involves disputed material facts. Brown claims that Stern Oil orally guaranteed a five-cent profit on every gallon of fuel he sold. Stern Oil contends that it did not make this guarantee. For summary judgment purposes, "[a] disputed fact is . . . material [if] it would affect the outcome of the suit under the governing substantive law in that a reasonable jury could return a verdict for the nonmoving party." *Robinson v. Ewalt*, 2012 S.D. 1, ¶ 10, 808 N.W.2d 123, 126. Here, the disputed fact, whether Stern Oil did or did not make the oral guarantee, would certainly affect the outcome of Brown's fraudulent inducement counterclaim and thus, it is material to the claim. The circuit court's ruling improperly disposed of this factual question by granting summary judgment.

[¶14.] Furthermore, Brown's counterclaim employs actual fraud under SDCL 53-4-5. "Actual fraud is always a question of fact." SDCL 53-4-5.[5] We have acknowledged that "[q]uestions of fraud and deceit are generally questions of fact and as such are to be determined by the jury." *Ehresmann v. Muth*, 2008 S.D. 103, ¶ 20, 757 N.W.2d 402, 406. Regarding the reliance element of actual fraud, the fact that Brown testified he signed the agreements in reliance upon the five-cent guarantee provides an evidentiary basis to support his claim. This case is in large part a question of credibility: Brown says he signed the contract in reliance upon this representation and Stern Oil says he did not. Questions of credibility are also questions of fact for the jury. *Cont'l Grain Co. v. Heritage Bank*, 1996 S.D. 61, ¶ 16, 548 N.W.2d 507, 511. The circuit court's grant of summary judgment improperly disposed of genuine issues of material fact.

[¶15.] The dissent argues that Brown failed to submit evidence sufficient to support a finding that Brown's reliance upon Stern Oil's alleged misrepresentation

---

5. SDCL 53-4-5 defines actual fraud in relation to contracts:

> Actual fraud in relation to contracts consists of any of the following acts committed by a party to the contract, or with his connivance, with intent to deceive another party thereto or to induce him to enter into the contract:
> (1) The suggestion as a fact of that which is not true by one who does not believe it to be true;
> (2) The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believe it to be true;
> (3) The suppression of that which is true by one having knowledge or belief of the fact;
> (4) A promise made without any intention of performing it; or
> (5) Any other act fitted to deceive.

was justified. The dissent claims that even if Brown's version of the facts are true, Brown failed to carry this burden, thus making summary judgment appropriate. However, the question of whether Brown's reliance was justified is a question of fact in this case. Brown presented evidence that the retail market in that area was highly competitive. The evidence also demonstrated that Stern Oil set the price. Therefore, there was a factual dispute regarding the justifiable reliance evidence because Brown was not entirely free to choose a retail price for the fuel he sold.

[¶16.] Furthermore, Brown was not required to *prove* all elements of fraudulent inducement in order to survive summary judgment. "A motion under SDCL 15-6-56 (Rule 56) is designed 'to isolate and dispose of factually unsupported claims or defenses.'" *Chem-Age Indus., Inc. v. Glover*, 2002 S.D. 122, ¶ 18, 652 N.W.2d 756, 765 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986)). "[T]he focus in summary judgment hearings centers on the existence of admissible and probative evidence to support the challenged claim or defense." *Id.* (citing *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997)).[6] Brown's fraudulent inducement counterclaim was not a factually unsupported claim, especially considering that the offered evidence is not barred by the parol evidence rule. Brown was not required to establish and prove every element of fraudulent inducement, as the summary judgment proceeding was

---

6.    In *Ehresmann*, this Court concluded that "because the essential elements of the claims are adequately supported by alleged facts, albeit disputed, summary judgment [was] inappropriate for Ehresmann's claims of fraud and deceit and negligent misrepresentation." *Ehresmann*, 2008 S.D. 103, ¶ 22, 757 N.W.2d at 406.

not a substitute for trial. Brown offered specific and probative admissible evidence and demonstrated that there is a genuine issue for trial regarding the fraudulent inducement counterclaim. This was sufficient to preclude summary judgment. For all of these reasons, the circuit court erred in granting summary judgment to Stern Oil on Brown's fraudulent inducement counterclaim.

*Breach of Contract Claim*

[¶17.] Brown argues that the circuit court erred by granting Stern Oil summary judgment on its breach of contract claim because the MFSAs were not enforceable contracts. In support of his argument, Brown cites *LaMore Restaurant Group, LLC v. Akers*, in which we stated, "[i]f an agreement leaves open essential terms and calls for the parties to agree to agree and negotiate in the future on essential terms, then a contract is not established." 2008 S.D. 32, ¶ 16, 748 N.W.2d 756, 761 (quoting *Weitzel v. Sioux Valley Heart Partners*, 2006 S.D. 45, ¶ 23, 714 N.W.2d 884, 892). In *LaMore*, we recognized that price is ordinarily an essential term of an agreement that must be "fixed and determinable or reasonably certain." *See id.* ¶ 18 (citations omitted). Here, the MFSAs did not define the price of the fuel Brown was required to purchase from Stern Oil. Brown thus argues that the MFSAs were not enforceable contracts. In *LaMore*, however, the contract at issue was for the sale of real estate, so South Dakota's version of the UCC did not apply. *See id.* ¶ 2. Here, the MFSAs were primarily agreements for the sale of goods and we must therefore apply the provisions of Title 57A, South Dakota's version of the UCC, to decide this case. SDCL 57A-2-102.

[¶18.]    SDCL 57A-2-305(1) addresses the enforceability of an agreement that leaves the price term open.  The statute provides:

> (1) The parties *if they so intend* can conclude a contract for sale even though the price is not settled.  In such a case the price is a reasonable price at the time for delivery if:
>     (a) Nothing is said as to price; or
>     (b) The price is left to be agreed by the parties and they fail to agree; or
>     (c) The price is to be fixed in terms of some agreed market or other standard as set or recorded by a third person or agency and it is not so set or recorded.
> (2) A price to be fixed by the seller or by the buyer means a price for him to fix in good faith.
> (3) When a price left to be fixed otherwise than by agreement of the parties fails to be fixed through fault of one party the other may at his option treat the contract as canceled or himself fix a reasonable price.
> (4) Where, however, the parties intend not to be bound unless the price be fixed or agreed and it is not fixed or agreed there is no contract.  In such a case the buyer must return any goods already received or if unable so to do must pay their reasonable value at the time of delivery and the seller must return any portion of the price paid on account.

SDCL 57A-2-305 (emphasis added).  Thus, open price term contracts are permissible under SDCL 57A-2-305(1), but only if the parties intended to enter into an open price term contract.  Comment 2 to UCC § 2-305, which is almost identical to SDCL 57A-2-305, explains that whether the parties intended to enter into a contract containing an open price term "is, in most cases, a question to be determined by the trier of fact."[7]  Furthermore, we have acknowledged that "[a]ctions involving state of mind, which include cases involving intent, are not

---

7.    Although the comments to the Uniform Commercial Code were not adopted by the South Dakota Legislature, this Court has found them to be a helpful guide to interpreting the text of the Code.  *Estate of Klauzer*, 2000 S.D. 7, ¶ 33 n.5, 604 N.W.2d 474, 481 n.5.

- 11 -

usually suited for summary disposition." *Ahl v. Arnio*, 388 N.W.2d 532, 534 (S.D. 1986) (citing 73 Am. Jur. 2d *Summary Judgment* § 4 (1974)).

[¶19.] Here, whether the agreements in this case are open price term contracts under SDCL 57A-2-305 is material to Stern Oil's breach of contract claim because it resolves whether the agreements are enforceable in the first instance. Whether the agreements are open price term contracts involves disputed material facts.[8] Brown argues that the contracts did not contain an open price term or a fixed price term, and the contracts are therefore unenforceable.[9] Stern Oil, on the other hand, argues that the contracts contain open price terms, making the agreements enforceable contracts.[10] The circuit court disposed of the liability portion of Stern Oil's breach of contract claim without allowing the introduction of evidence on the issue of intent. As discussed above, the circuit court erroneously invoked the parol evidence rule, excluding Brown's offered evidence regarding the alleged five-cent profit guarantee. This evidence was relevant to whether the

---

8.  *See, e.g., Upsher-Smith Labs., Inc. v. Mylan Labs., Inc.,* 944 F. Supp. 1411, 1432 (D. Minn. 1996) (recommending denial of summary judgment because the issue of whether the alleged contract includes an open price term involves disputed, material questions of fact).

9.  Brown does not argue that the MFSAs are not contracts. Rather, Brown contends that the MFSAs are unenforceable contracts due to their lack of a sufficiently definite price term.

10. As Brown notes, in granting Stern Oil partial summary judgment on liability, the court did not expressly conclude that the contracts contain open price terms under SDCL 57A-2-305. In fact, the court did not cite SDCL 57A-2-305 in its memorandum decision. It was not until after the trial on damages that the court expressly held that the contracts contained open price terms.

parties intended to enter into a contract with an open price term and ultimately, the enforceability of the contracts.

[¶20.] Furthermore, whether Stern Oil set the prices in good faith is a question of fact. Under SDCL 57A-2-305(2), "[a] price to be fixed by the seller or by the buyer means a price for him to fix in good faith." The contracts in this case state that "all prices shall include applicable taxes, and are subject to change by [Stern Oil] at any time and without notice." The agreements between Stern Oil and Brown placed absolutely no boundaries on Stern Oil's power to fix the fuel prices. The agreements allowed Stern Oil to raise prices on an arbitrary basis for any reason or no reason at all. Therefore, even if a fact finder had determined that SDCL 57A-2-305 applies, a fact finder must then determine whether Stern Oil actually set the prices in good faith by examining the factual evidence presented by the parties.[11]

[¶21.] The dissent argues that the plain language of SDCL 57A-2-305(2) does not require an express contract provision obligating the seller to fix the price term in good faith in order to qualify as an open price term contract. We agree. Contrary to the dissent's claim otherwise, we do not conclude in this case that SDCL 57A-2-305(2) may not apply to the agreements between Brown and Stern Oil merely because the agreements do not expressly provide that "Stern Oil will fix the prices

---

11. The dissent argues that Brown did not argue on appeal that there are disputed questions of fact regarding whether Stern Oil set the price of its fuel in good faith and as a result, the issue is not before this Court. However, we do not decide the issue of whether Stern Oil set the prices in good faith on the merits, but merely note that this issue involves additional questions of fact precluding summary judgment disposition in this case.

in good faith." Instead, we conclude that whether the parties intended to enter into open price term contracts and whether Stern Oil fixed fuel prices in good faith were disputed questions of fact because of the alleged profit guarantee in a competitive retail market and Brown's argument that there was no "ascertainable market standard" by which to determine a reasonable fuel price. For all of these reasons, the circuit court erred in granting partial summary judgment on the liability portion of Stern Oil's breach of contract claim.

[¶22.] We also cannot overlook the procedural connection between Stern Oil's breach of contract claim and Brown's fraudulent inducement counterclaim. While they are indeed two separate claims, a finding in Brown's favor on the fraudulent inducement claim may affect the outcome of Stern Oil's breach of contract claim, considering that one remedy for fraudulent inducement is contract rescission. SDCL 57A-2-721; 48 Am. Jur. Proof of Facts 3d 329, *Proof of Fraudulent Inducement of a Contract and Entitlement to Remedies* § 17 (2011). Therefore, we reverse and remand both claims for a new trial.

## CONCLUSION

[¶23.] Both Brown's fraudulent inducement counterclaim and Stern Oil's breach of contract claim involve disputed material facts. The circuit court erred in granting Stern Oil summary judgment. Therefore, we reverse and remand for further proceedings.[12]

[¶24.] ZINTER and WILBUR, Justices, concur.

---

12. Because we reverse the grant of summary judgment, we decline to address the remaining issues raised on appeal.

[¶25.]     KONENKAMP and SEVERSON, Justices, dissent.


SEVERSON, Justice (dissenting).

[¶26.]     I respectfully dissent. Brown alleges that Stern Oil fraudulently induced him to enter into the MFSAs and the BIPs by verbally guaranteeing a five-cent profit on every gallon of fuel he sold. In addressing this issue, the circuit court concluded that the parties' negotiations regarding the MFSAs and the BIPs, including the alleged verbal guarantee of a five-cent per gallon profit, was inadmissible parol evidence. Without the evidence of the alleged verbal guarantee, the circuit court held that Brown's fraudulent inducement claim failed as a matter of law.

[¶27.]     The parol evidence rule, codified at SDCL 57A-2-202, governs disputes involving agreements for the sale of goods. At the time of the hearing on Stern Oil's motion for summary judgment, the statute provided as follows:

> Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented
> (a)     By course of dealing or usage of trade (§ 57A-1-303) or by course of performance (§ 57A-2-208); and
> (b)     By evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

SDCL 57A-2-202 (2008).

[¶28.] It is well settled that, when evidence is introduced to establish fraud as a ground for rescinding a contract, the parol evidence rule does not apply. *Sabbagh v. Prof'l & Bus. Men's Life Ins., Co.,* 79 S.D. 615, 116 N.W.2d 513, 520 (1962) (quoting 32 C.J.S. *Evidence* § 979)*; see Majority Opinion* ¶ 11. Here, Brown sought to introduce evidence that Stern Oil fraudulently induced him to enter into the contracts by guaranteeing a five-cent profit on every gallon of fuel he sold. Such evidence is not barred by the parol evidence rule. Accordingly, I agree with the majority that the circuit court erroneously applied the parol evidence rule. But I do not believe our analysis ends with that determination.

[¶29.] In *Muhlbauer v. Estate of Olson*, we stated, "In considering a [circuit] court's grant or denial of summary judgment, this Court will affirm only if all legal questions have been decided correctly." 2011 S.D. 42, ¶ 7, 801 N.W.2d 446, 448 (quoting *Bertelsen v. Allstate Ins. Co.*, 2011 S.D. 13, ¶ 15, 796 N.W.2d 685, 692-93). The majority cites *Muhlbauer* in support of its conclusion that the circuit court's erroneous application of the parol evidence rule, by itself, is grounds for reversing the circuit court's grant of summary judgment. *Majority Opinion* ¶ 12. I disagree. "It is a matter of settled law that this [C]ourt may affirm even where the circuit court reaches the correct result for the wrong reason." *Oldham-Ramona Sch. Dist. No. 39-5 v. Jensen*, 503 N.W.2d 260, 264 (S.D. 1993) (citing *Anderson v. Somers,* 455 N.W.2d 219 (S.D. 1990)); *see Schmiedt v. Loewen*, 2010 S.D. 76, ¶ 20 n.3, 789 N.W.2d 312, 318 n.3 ("[A] trial court may still be upheld if it reached the right result for the wrong reason." (quotation omitted)). "In fact, affirmance is suitable if any legal basis exists to support the court's decision." *Horne v. Crozie*r, 1997 S.D.

65, ¶ 5, 565 N.W.2d 50, 52 (citing *St. Paul Fire & Marine Ins. v. Schilling,* 520 N.W.2d 884, 886 (S.D. 1994); *Waddell v. Dewey Cnty. Bank,* 471 N.W.2d 591, 593 (S.D. 1991)). In this case, I believe a legal basis exists to affirm the circuit court's decision.

[¶30.] This Court has held that "entry of summary judgment is mandated against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Danielson v. Hess*, 2011 S.D. 82, ¶ 8, 807 N.W.2d 113, 115 (quoting *Dakota Indus., Inc. v. Cabela's.com, Inc.,* 2009 S.D. 39, ¶ 11, 766 N.W.2d 510, 513). "Sufficient evidence requires establishment of a prima facie case." *Fin-Ag, Inc. v. Pipestone Livestock Auction Mkt., Inc.,* 2008 S.D. 48, ¶ 33, 754 N.W.2d 29, 43 (citing *Mushitz v. First Bank of S.D., N.A.*, 457 N.W.2d 849, 859 (S.D. 1990)). "A prima facie case has been established when there are facts in evidence which if unanswered would justify persons of ordinary reason and fairness in affirming the question which the plaintiff is bound to maintain." *Id.* (quoting *Sandner v. Minnehaha Cnty.,* 2002 S.D. 123, ¶ 13, 652 N.W.2d 778, 783). The majority notes that, under SDCL 53-4-5, "[a]ctual fraud is always a question of fact." *See Ehresmann v. Muth*, 2008 S.D. 103, ¶ 20, 757 N.W.2d 402, 406 (noting that "[q]uestions of fraud and deceit are generally questions of fact and as such are to be determined by the jury"). But this statutory provision does not relieve plaintiffs of their duty to "show that they will be able to place sufficient evidence in the record at trial to support findings on all the elements on which they have the burden of proof." *Clark Cnty. v. Sioux Equip. Corp.*, 2008 S.D. 60, ¶ 8, 753 N.W.2d 406, 409

(quoting *Bordeaux v. Shannon Cnty. Sch.*, 2005 S.D. 117, ¶ 14, 707 N.W.2d 123, 127).

[¶31.]     In order for Brown's claim of fraudulent inducement to survive summary judgment, Brown must have submitted evidence sufficient to support a finding that his reliance upon Stern Oil's alleged misrepresentation was justified.[13] *See Martschinske v. Olympic Styles, Inc.*, 628 F. Supp. 231, 239 (D.S.D. 1984), *aff'd sub nom. Martschinske v. Olympic Styles*, 774 F.2d 1172 (8th Cir. 1985) (recognizing justifiable reliance as a necessary element of a claim for fraudulent inducement under SDCL 53-4-5). Even accepting Brown's version of the facts as true, I believe Brown has failed to submit evidence to support such a finding.

[¶32.]     It is undisputed that Stern Oil did not set the fuel prices at the gas stations Brown owned. The profit margin Brown realized on the sale of fuel was ultimately dependant upon the price Brown chose to charge his customers. Since

---

13.     SDCL 53-4-5 defines actual fraud in relation to contracts. The statute provides:

> Actual fraud in relation to contracts consists of any of the following acts committed by a party to the contract, or with his connivance, with intent to deceive another party thereto or to induce him to enter into the contract:
> (1) The suggestion as a fact of that which is not true by one who does not believe it to be true;
> (2) The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believe it to be true;
> (3) The suppression of that which is true by one having knowledge or belief of the fact;
> (4) A promise made without any intention of performing it; or
> (5) Any other act fitted to deceive.

SDCL 53-4-5.

Stern Oil could not control the price of the fuel Brown sold, Brown could not have justifiably relied upon Stern Oil's alleged verbal guarantee of a five-cent per gallon profit.

[¶33.]     Moreover, Stern Oil's alleged verbal guarantee of a five-cent per gallon profit constitutes a promise as to future events. The failure to perform a promise does not, standing alone, amount to fraud. Under SDCL 53-4-5(4), the promise must have been made "without any intention of performing it." The record in this case is devoid of evidence that Stern Oil did not intend to perform its promise at the time it allegedly guaranteed Brown would realize a five-cent profit on every gallon of fuel he sold. *See Weitzel v. Sioux Valley Heart Partners*, 2006 S.D. 45, 714 N.W.2d 884 (affirming the circuit court's dismissal of an employee's claim of fraud against his employer because the employee failed to allege facts to show that the employer made a promise of employment without an intention of performing).

[¶34.]     In opposing a motion for summary judgment, the nonmoving party "must present specific facts showing that a genuine, material issue for trial exists." *Robinson v. Ewalt*, 2012 S.D. 1, ¶ 7, 808 N.W.2d 123, 125 (quoting *Murray v. Mansheim*, 2010 S.D. 18, ¶ 4, 779 N.W.2d 379, 381-82). "Disputes of fact are not material unless they change the outcome of a case under the law." *Hall v. State ex rel. S.D. Dep't of Transp.*, 2011 S.D. 70, ¶ 9 n.3, 806 N.W.2d 217, 221 n.3 (citing *Jerauld Cnty. v. Huron Reg'l Med. Ctr., Inc.*, 2004 S.D. 89, ¶ 41 n.4, 685 N.W.2d 140, 149 n.4). Here, even if we accept as true Brown's allegation that Stern Oil verbally guaranteed him a five-cent per gallon profit, this evidence does not change the outcome of the case. *See Kjerstad Realty, Inc. v. Bootjack Ranch, Inc.*, 2009 S.D.

93, ¶ 15, 774 N.W.2d 797, 802 ("In reviewing a grant of summary judgment, we must accept the non-moving party's version of the facts as true."). Brown has failed to submit evidence sufficient to support a reasonable trier of fact's finding that the elements of fraudulent inducement were present. Accordingly, I would hold that the circuit court did not err by granting Stern Oil summary judgment on Brown's fraudulent inducement claim.

*Breach of Contract Claim*

[¶35.]     Brown argues that the circuit court erred by granting Stern Oil summary judgment on its breach of contract claim. He argues that the MFSAs were not enforceable contracts because they lacked a price term. SDCL 57A-2-305 addresses the enforceability of an agreement that leaves the price term open. The statute provides:

> (1) The parties if they so intend can conclude a contract for sale even though the price is not settled. In such a case the price is a reasonable price at the time for delivery if:
>     (a) Nothing is said as to price; or
>     (b) The price is left to be agreed by the parties and they fail to agree; or
>     (c) The price is to be fixed in terms of some agreed market or other standard as set or recorded by a third person or agency and it is not so set or recorded.
> (2) A price to be fixed by the seller or by the buyer means a price for him to fix in good faith.
> (3) When a price left to be fixed otherwise than by agreement of the parties fails to be fixed through fault of one party the other may at his option treat the contract as canceled or himself fix a reasonable price.
> (4) Where, however, the parties intend not to be bound unless the price be fixed or agreed and it is not fixed or agreed there is no contract. In such a case the buyer must return any goods already received or if unable so to do must pay their reasonable value at the time of delivery and the seller must return any portion of the price paid on account.

SDCL 57A-2-305.

[¶36.] The open price fuel terms of the MFSAs allowed the seller, Stern Oil, to change the price term "at any time and without notice." This effectively granted Stern Oil the right to fix the price term. Under SDCL 57A-2-305(2), parties to a contract may agree that price will be fixed by the seller in good faith. The majority takes issue with the fact that the MFSAs did not expressly require Stern Oil to fix the price term in good faith. But the plain language of SDCL 57A-2-305(2) does not require an open price term contract to include a contractual provision obligating the seller to fix the price in good faith. The statute merely imposes an obligation on the seller to exercise good faith in fixing the price term. *See* SDCL 57A-2-305(2) cmt. 3 (explaining that SDCL 57A-2-305(2) "rejects the uncommercial idea that an agreement that the seller may fix the price means that he may fix any price he may wish by the express qualification that the price so fixed must be fixed in good faith. . . ."). The majority concludes that there are disputed questions of fact regarding whether Stern Oil set the price of its fuel in good faith. Yet Brown did not assert lack of good faith as a defense to Stern Oil's breach of contract claim in the circuit court, and he has not raised this issue on appeal. Indeed, Brown did not argue below, and has not now asserted, that there are disputed questions of fact regarding whether Stern Oil set the price of its fuel in good faith. This issue is simply not before this Court. Therefore, it does not constitute a proper ground for reversal.[14]

---

14. The issue of whether an agreement is an enforceable open price term contract must be distinguished from the issue of whether the seller set the price in good faith. While these issues are related, they are separate and distinct. A court or trier of fact must determine whether an agreement is an open price

(continued . . .)

- 21 -

[¶37.] Brown also argues that the parties' course of dealing, including Stern Oil's alleged verbal guarantee of a five-cent per gallon profit, is evidence that the parties did not intend to create open price term contracts. Brown raises this argument for the first time on appeal. In responding to Stern Oil's motion for summary judgment, Brown argued that Stern Oil fraudulently induced him to enter into the MFSAs and the BIPs by verbally guaranteeing he would earn a five-cent profit on every gallon of fuel he sold. But Brown did not argue that Stern Oil's alleged verbal guarantee of a five-cent per gallon profit was evidence that the parties did not intend to create open price term contracts. At the hearing on Brown's motion for reconsideration, Brown argued that the MFSAs were not valid and enforceable open price term contracts because there was no "ascertainable market standard" by which to determine a reasonable fuel price. But again, Brown did not seek to introduce extrinsic evidence regarding the parties' intent to contract. This Court has "consistently held that [it] may not review theories argued for the first time on appeal." *Alvine Fam. Ltd. P'ship v. Hagemann*, 2010 S.D. 28, ¶ 21, 780

---

(. . . continued)

> term contract before it considers whether the seller set the price of the contracted goods in good faith. If the seller failed to set the price in good faith, South Dakota law affords the buyer various potential remedies, including cancellation of the contract. SDCL 57A-2-305(3). But a seller's breach of the good faith requirement of SDCL 57A-2-305(2) has no bearing on the initial determination of whether the parties' agreement constituted an open price term contract. In this case, Brown has not argued that there are disputed questions of fact regarding whether Stern Oil set the price of its fuel in good faith. Therefore, contrary to the majority's insinuation otherwise, it is improper for this Court to reverse the circuit court's grant of summary judgment on this basis, even if this Court "do[es] not decide the issue of whether Stern Oil set the prices in good faith on the merits." *Majority Opinion* ¶ 20 n.10.

N.W.2d 507, 514 (citing *Boever v. Bd. of Accountancy*, 526 N.W.2d 747, 750 (S.D. 1995)). Because Brown did not argue to the circuit court that the parties' course of dealing, including Stern Oil's alleged verbal guarantee of a five-cent per gallon profit, was evidence that the parties did not intend to create open price term contracts, I would decline to address this argument on appeal.[15]

[¶38.] Brown next argues that under the terms of the MFSAs, Stern Oil was required to "offer to sell" a specified amount of fuel to Brown at prices that were to be determined by Stern Oil, but Brown was not required to purchase any amount of fuel from Stern Oil. Accordingly, Brown contends that the MFSAs were nothing more than unenforceable "agreements to agree."

[¶39.] After reviewing the terms of the MFSAs, I find Brown's argument to be without merit. The MFSAs set forth a maximum volume of fuel that Stern Oil was obligated to "offer to sell" Brown. However, in both MFSAs, Paragraph 4(c) explicitly stated that "[i]n each contract year, [Brown] *must* purchase from [Stern

---

15. As the majority notes, Comment 2 to UCC § 2-305 states that whether the parties intended to enter into a contract containing an open price term "is, in most cases, a question to be determined by the trier of fact." But in this case, Brown did not argue to the circuit court that the parties did not intend to form an open price term contract. He argued only that the MFSAs were not valid and enforceable open price term contracts because there was no "ascertainable market standard" by which to determine a reasonable fuel price. In the alternative, Brown argued that he was fraudulently induced to sign the MFSAs. The circuit court found Brown's arguments to be without merit and granted summary judgment in favor of Stern Oil. Brown now seeks to present evidence of the parties' intent for the first time on appeal. Because Brown failed to raise the issue of intent before the circuit court, the circuit court did not have the opportunity to address the issue. As such, I would not address the issue of the parties' intent to contract for the first time on appeal.

Oil] a minimum of seventy-five percent (75%) of the Maximum Annual Volume for Exxon-branded gasoline." (Emphasis added.) The MFSAs provided that the maximum annual volume for the first contract year at Freeway Mobil was 1.38 million gallons of gasoline, and the maximum annual volume for the first contract year at Exxon Goode To Go was 1.5 million gallons of gasoline and 720,000 gallons of diesel. After the first contract year, the maximum annual volume of fuel was adjusted each year based on sales volume. The MFSAs clearly required Brown to purchase at least 75% of the maximum annual volume of fuel. Brown's argument that he was not required to purchase any amount of fuel from Stern Oil is contrary to the express terms of the MFSAs.

[¶40.] The MFSAs contained an open price fuel term which provided that fuel prices were "subject to change by [Stern Oil] at any time and without notice." Under SDCL 57A-2-305(2), parties to a contract may agree that price will be fixed by the seller in good faith. The record shows that Stern Oil consistently set the price of the fuel it sold to Brown and other customers at 1.5 cents above the rack price, plus tax and freight charges. Brown has not argued that Stern Oil failed to set the price of its fuel in good faith. I would therefore hold that the MFSAs are valid open price term contracts under SDCL 57A-2-305(2). By refusing to purchase fuel from Stern Oil, Brown breached the terms of the MFSAs. The circuit court did not err in granting Stern Oil's motion for summary judgment.

[¶41.] For these reasons, I respectfully dissent.

[¶42.] KONENKAMP, Justice, joins this dissent.