GILBERTSON, Chief Justice
(dissenting).
[¶ 28.] I respectfully dissent. The Court correctly notes that SDCL 20-9-4.1 does not directly protect the acts of a fire department or fire district. However, as the South Dakota Constitution is the “mother law” which provides sovereign immunity [5] protection, resort to SDCL 20-9-4.1 is unnecessary. See Davis v. State, 2011 S.D. 51, ¶ 76, 804 N.W.2d 618, 643 (Gilbertson, C.J., concurring in result) (citations omitted). Despite the circuit court’s erroneous reliance on SDCL 20-9-4.1, “on appeal this Court will affirm the circuit court’s ruling granting a motion for summary judgment if any basis exists to support the ruling.” Stem Oil Co. v. Brown, 2012 S.D. 56, ¶ 9, 817 N.W.2d 395, *546 399 (citing Discover Bank v. Stanley, 2008 S.D. 111, ¶ 19, 757 N.W.2d 756, 762). In this case, Chester Fire adequately carried its burden of proving that it is entitled to governmental immunity,[6] as expressed by our Constitution[7] and our case law and recognized by SDCL 21-32A-3.
[¶ 29.] The common-law doctrine of sovereign immunity was incorporated into Article III, § 27 of the South Dakota Constitution. “Sovereign immunity ‘prevents the governing acts of the state, its agencies, other public entities, and their employees from attack in court without the state’s consent.’ ” Dan Nelson, Auto., Inc. v. Viken, 2005 S.D. 109, ¶ 27, 706 N.W.2d 239, 249 (quoting Wulf v. Senst, 2003 S.D. 105, ¶ 20, 669 N.W.2d 135, 142). “The legislature within constitutional limitations unquestionably has control over the liability to which the state and its governmental subdivisions and agencies may be subjected for tort.” Conway v. Humbert, 82 S.D. 317, 322, 145 N.W.2d 524, 527 (1966). See also Bickner v. Raymond Twp., 2008 S.D. 27, ¶ 10, 747 N.W.2d 668, 671 (“Sovereign immunity is the right of public entities to be free from liability for tort claims unless waived by legislative enactment.”) (citation omitted). This Court has long held “that if there is to be a departure from the rule of governmental immunity it should result from legislative action.” Cromwell, 2001 S.D. 100, ¶ 23, 632 N.W.2d at 26 (quoting High-Grade Oil Co. v. Sommer, 295 N.W.2d 736, 738 (S.D.1980)). Moreover, any abrogation must be express. Rupert v. City of Rapid City, 2013 S.D. 13, ¶ 33, 827 N.W.2d 55, 67 (citation omitted).
[¶ 30.] In Conway v. Humbert, this Court recognized that “[t]he power to organize a fire department for prevention of injury and damage by fire is clearly governmental and, in the absence of statutory provision to the contrary, a municipality will not ordinarily be liable for the negligent acts of firemen in the performance of their duties.” 82 S.D. at 321, 145 N.W.2d at 527 (citations omitted). This immunity did not stem from statutory language whereby the Legislature explicitly stated that municipalities were cloaked in immunity from liability. Rather, municipalities were cloaked in sovereign immunity, because “in the performance of a governmental function a municipal corporation acts as agent of the state and partakes of its sovereignty with respect to immunity.” *547 Id., 145 N.W.2d at 526 (citation omitted). The Legislature simply categorized towns as “bodies corporate” and authorized them to carry out governmental functions. See generally Territory of Dakota Laws of 1872-73, ch. 51 (establishing towns and townships). The approach taken by this Court of looking at the function of the entity was finally memorialized in part in 1986, when the Legislature defined a public entity as “the State of South Dakota, all of its branches and agencies, boards and commissions[, and] all public entities established by law exercising any part of the sovereign power of the state ... and all other legal entities that public entities are authorized by law to establish.” SDCL 3-21-1(2). The same year, the Legislature statutorily recognized that such entities were immune from liability unless immunity was waived by participation in a risk sharing pool or insurance. SDCL 21-32A-3.[8] These acts of the Legislature finally recognized in statute what this Court had long acknowledged from common law: that immunity from suit extended to all public entities performing a governmental function. See Conway, 82 S.D. at 322, 145 N.W.2d at 527 (acknowledging that abrogating “the common law rule of governmental immunity would apply to all governmental entities including counties, townships, school districts and the like”); see also Plumbing Supply Co., 32 S.D. 270, 142 N.W. at 1132 (recognizing that counties, civil townships, and school districts “are the agents of the state for the purpose of carrying into effect the functions of government, and as such are not liable to be sued civilly for damages caused by neglect to perform such duties” (emphasis added)).
[¶ 31.] The Court declines to address the issue of sovereign immunity, stating that Chester Fire’s assertion of the defense was a “mere conclusory allegation,” and should therefore fail. I do not agree. The record reflects that Chester Fire asserted it was immune in its answer, offered tangible evidence of its status as a public entity as recognized by the State, and argued the applicable rules of law qualifying it for governmental immunity from liability. It continues to persuasively argue these rules of law on appeal to this Court.
[¶ 32.] In its answers to Gabriel’s complaint and amended complaint, Chester Fire stated, “These Defendants allege that they are entitled to immunity for any claims asserted by the Plaintiff.” The answer was not qualified by limitation. Chester fire supported this claim to defense with factual evidence of its status as a public entity. In an affidavit supporting Chester Fire’s opposition to Gabriel’s motion for summary judgment, counsel submitted Chester Rural Fire Protection District’s registration with the State as a rural fire protection district and a copy of SDCL 34-31A-16, which designates properly organized rural fire protection districts as “bod[ies] politic and corporate.”[9] This affidavit was later incorporated into Chester Fire’s motion for summary judgment. In *548 a separately asserted argument Chester Fire denied liability under SDCL 20-9-4.1, because Bauman’s conduct was not willful, wanton, or reckless.
[¶ 33.] Although Chester Fire did not use the term “sovereign immunity,” the record reflects that Chester Fire argued the applicable rule of law in this case using the terms “immunity” and “government immunity.” See supra n.6. Specifically, at the summary judgment hearing Chester fire argued:
In other words, if the statute or regulation has the word may in it, it’s discretionary with the entity or the police or the fire chief in this case to provide those, under principals of government immunity. And these are public entities, and [Bauman] is a public employee, because these fire districts and fire departments are considered a corporate body politics under the statute. Discretionary functions are exempt and are immune. [Gabriel has] not resisted that in any fashion in any of [his] reply briefs.
[¶ 34.] Chester Fire’s arguments to the circuit court as to “government immunity” sufficiently reflect the applicable rules of law. Rural fire protection districts are a type of public entity created by the Legislature to carry out a government function.[10] Generally, public entities are immune from liability when carrying out discretionary governmental functions. See SDCL 21-32A-3; Wilson v. Hogan, 473 N.W.2d 492, 494 (S.D.1991) (citing Gasper v. Freidel, 450 N.W.2d 226, 230 (S.D.1990); Aune, 464 N.W.2d at 3 (additional citations omitted)). We have recognized that the State cannot extend governmental immunity to proprietary functions, even if carried out by a public entity. Aune, 464 N.W.2d at 5; see also Oten v. City of Sioux Falls, 393 N.W.2d 286, 290 (S.D.1986). Public entities are only protected like the State from liability when they are acting like the State in carrying out governmental functions. Chester Fire carried its burden of proving it was a public entity — a registered rural fire protection district authorized by SDCL 34-31A-16 — and that it was carrying out the governmental function of fire protection.
[¶ 35.] Gabriel’s claims against Chester Fire stem from alleged negligence in training and equipping Bauman. However, as argued by Chester Fire, the functions of training and equipping the firefighters are discretionary functions. “In order to find a duty ‘ministerial,’ [as opposed to discretionary,] we must find a ‘governing rule or standard’ so clear and specific that it directs the government actor without calling upon the actor to ascertain how and when to implement that rule or standard.” Truman v. Griese, 2009 S.D. 8, ¶ 22, 762 N.W.2d 75, 81. There is no clear and specific governing rule for the training and *549 equipping of a fire crew by a rural fire protection district. Rather, there is a general grant of authority. See SDCL 34-31A-17 (granting fire protection districts the “general powers ... to organize, establish, equip, maintain, and supervise a fire department or company to serve the district” (emphasis added)). This direction given by statute is not so clear and specific that “one could ... pluck an ordinary citizen off the street and expect they could successfully execute the duties” of training and equipping a fire crew. See Truman, 2009 S.D. 8, ¶ 22, 762 N.W.2d at 81 (quoting Hansen v. S.D. Dep’t of Transp., 1998 S.D. 109, ¶ 29, 584 N.W.2d 881, 887-88). Thus, Chester Fire was immune from liability in carrying out these duties, because they were discretionary governmental functions performed by a public entity. Gabriel raised no applicable argument to refute this grant of immunity.
[¶ 36.] On appeal, Gabriel’s only counter to Chester Fire’s governmental immunity defense is that Chester Fire failed to carry its “burden of showing that it has not waived sovereign immunity pursuant to SDCL 21-32A-1.” This argument inappropriately places upon Chester Fire the burden of raising and refuting an exception to the general rule of immunity. We have held that the party raising the affirmative defense of immunity has the burden of proving that it is entitled to immunity. Masad v. Weber, 2009 S.D. 80, ¶ 15, 772 N.W.2d 144, 152-153. However, “[t]he party opposing summary judgment must establish the specific facts which show that a genuine and material issue for trial exists.” Wulf, 2003 S.D. 105, ¶18, 669 N.W.2d at 142 (citation omitted).
[¶ 37.] In this case, Chester Fire established it was entitled to immunity as a public entity. Chester Fire’s governmental immunity did not originate from its lack of insurance, such that Chester Fire must prove lack of insurance to establish its entitlement to immunity. Rather, as SDCL 3-21-1 indicates, the purchase of insurance coverage acts as an exception, waiving the long-recognized immunity from liability to the extent the entity can be shown to have purchased insurance covering the specific harm alleged. See Patterson Farm, Inc. v. City of Britton, 22 F.Supp.2d 1085, 1094 (D.S.D.1998) (noting that city’s immunity was not waived as to pollution claims because insurance policy specifically excluded coverage).
[¶ 38.] Governmental immunity can be waived by various means.[11] Nevertheless, as previously noted, any abrogation must be express.[12] Accordingly, once a defendant public entity establishes that it is entitled to immunity, the burden of production should shift to the plaintiff to establish specific facts showing that the defendant has waived immunity, and therefore “a genuine and material issue for trial exists.” See Wulf, 2003 S.D. 105, ¶ 18, 669 N.W.2d at 142 (citation omitted).[13] In this case, Gabriel as the *550 non-moving party needed to establish the existence of a genuine issue of material fact, i.e., that Chester Fire waived its immunity by purchasing insurance that covered Gabriel’s claim.[14] Gabriel did not raise the issue of insurance or any other means by which Chester Fire allegedly waived its immunity. Therefore, I would affirm summary judgment in favor of Chester Fire based on governmental immunity.

. Article III, § 27 does not use the word "sovereign” nor does it use the word "immunity.” The term relates back to the common law origins of the doctrine where in England the King or Queen was sovereign and immune from suit. Plumbing Supply Co. v. Bd. of Educ., 32 S.D. 270, 142 N.W. 1131, 1132 (1913). Article III, § 27 simply declares it is up to the Legislature to establish "in what manner and in what courts suits may be brought against the state.” Neither does Article III, § 27 use the term "governmental immunity.”

. This Court has often used the terms "sovereign immunity” and "governmental immunity” interchangeably. See, e.g., Cromwell, 2001 S.D. 100, ¶ 23, 632 N.W.2d at 26; Aune, 464 N.W.2d at 4; Blue Fox Bar, Inc. v. City of Yankton, 424 N.W.2d 915, 917-18 (S.D.1988); L.R. Foy Constr. Co. v. S.D. State Cement Plant Comm’n, 399 N.W.2d 340, 346 (S.D.1987). Some jurisdictions have clearly delineated the difference between the terms. See, e.g., Vejse-li v. Pasha, 282 Conn. 561, 923 A.2d 688, 695-96 (2007) (recognizing that sovereign immunity only applies to the state, whereas governmental immunity applies to municipalities); Shootman v. Dep’t of Transp., 926 P.2d 1200, 1203 n. 2 (Colo.1996) ("The term ‘sovereign immunity’ generally refers to the immunity of the state or federal government whereas the term ‘governmental immunity’ refers to the immunity of all levels of government.”) (citation omitted); Ross v. Consumers Power Co., 420 Mich. 567, 363 N.W.2d 641, 649 (1984) ("Although the concepts of ‘sovereign immunity’ and 'governmental immunity’ are related, they have distinct origins and histories[.]’’).

. A debate ensued in the Constitutional Convention of 1885 concerning the adoption of this provision into the Constitution. It was argued the provision was unnecessary as the Legislature had the inherent power to determine such an issue as suits against the state. The provision adopted by this Convention is still the text of the South Dakota Constitution today. "The Legislature shall direct by law in what manner and in what courts suits may be brought against the state.” S.D. Const, art. Ill, § 27. See 1 South Dakota Constitutional Debates, 142, 234-35 (Huronite 1907).

. In Brown v. Egan Consol. Sch. Dist. No. 50-2, we opined that for waiver purposes, the definition of "public entities” under SDCL 3-21-1 applies to "public entities” as used in SDCL chapter 21-32A. 449 N.W.2d 259, 262 (S.D.1989).

. SDCL 34-31A-16 establishes properly organized rural fire protection districts as "bod[ies] politic and corporate.” This language is similar to language used by the 1872 Territorial Legislature, when towns were first recognized in statute. Territory of Dakota Laws of 1872-73, ch. 51, § 8 provides that "Each town is a body corporate, and has capacity: (1) "[t]o sue and be sued[,]” (2) "purchase and hold lands[,3” (3) make contracts, and (4) make orders for the disposition, regulation, or use of its property.

. Our case law indicates that providing fire protection services to the public is a governmental function. Conway, 82 S.D. at 321, 145 N.W.2d at 527. In carrying out this function, rural fire protection districts are granted, inter alia, the power to levy taxes, annex territory, develop and carry out a fire protection plan for the district, and establish or contract with a fire department. See SDCL 34 — 31 A — 17(1) (determine general fire protection program); SDCL 34-31A-22 to 24 (levy and collect taxes); SDCL 34-31A-36 (annex territory). Chester Fire Department would qualify as a legal entity that Chester Rural Fire Protection District is “authorized by law to establish.” See SDCL 34-31A-17(1),(6) (granting rural fire protection districts the authority to "[t]o determine upon a general fire protection program for the district” and "[t]o organize, establish, equip, maintain, and supervise a fire department or company to serve the district”). Thus both entities are cloaked in the immunity from liability contemplated by case law and enumerated in SDCL 3-21-3.

. See, e.g., SDCL 21-32A-3 (waiver by participation in risk sharing pool or purchase of insurance); Sisney v. Reisch, 2008 S.D. 72, ¶ 13, 754 N.W.2d 813, 819 (waiver by contract where the governmental entity has the legal authority to do so); S.D. Const, art. Ill, § 27 (waiver by legislative act).

. While analysis of legislative enactments concerning suits against governmental entities generally deals with the issue of abrogation, there is nothing in Article III, § 27 indi-eating legislative action must always flow in that direction. The Constitution also clearly grants the Legislature the authority to abrogate the abrogation and place the entity in the immune class where it once was subject to suit. See, e.g., SDCL 20-9-45 (immunizing from liability some acts of non-profit fire, ambulance, and search and rescue entities).

.We require this type of shifting burden of production when a plaintiff claims an exception to the affirmative defense of statute of *550 limitations lapse. See Zephier v. Catholic Diocese of Sioux Falls, 2008 S.D. 56, ¶ 9, 752 N.W.2d 658, 663. Other jurisdictions have applied this burden-shifting approach to governmental immunity. See, e.g., Hendrix v. Bexar Cnty. Hosp. Dist., 31 S.W.3d 661, 662 (Tex.App.2000); Harris v. Sutton, 183 Ohio App.3d 616, 918 N.E.2d 181, 185 (2009); Ex parte Lawley, 38 So.3d 41, 47 (Ala.2009); Rodriguez v. Transnave Inc., 8 F.3d 284, 287 n. 6 (5th Cir.1993) (citations omitted) (explaining burden shifting in Foreign Sovereign Immunity Act).

. The only time insurance was mentioned by either party was in the August 13, 2012 motion hearing in the context of Gabriel’s punitive damages claim against Chester Fire. Chester Fire stated:
But as far as punitive damages in this case, there is — there can't be punitive damages in this case against a public entity, cause under the law of insurance, a public entity, which the Chester Fire Department and Chester Rural Fire Protection District are, there's a waiver of sovereign immunity only to the extent of insurance coverage. There's no coverage under the City of Pierre case for punitive damages. Therefore, there can't be a waiver, therefore they can't recover them in this.
Chester Fire argued this point as a matter of law — that even if there were insurance, no insurance can cover punitive damages. Thus Chester Fire could never be liable for punitive damages. Gabriel dropped the punitive damages claim shortly thereafter.