#27937, 27948-r-SRJ
**2018 S.D. 15**

\* \* \* \*

STERN OIL COMPANY, INC.,                    Plaintiff and Appellant,

     v.

JAMES R. BROWN d/b/a
EXXON GOODE TO GO and
FREEWAY MOBIL,                              Defendants and Appellees,

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE LAWRENCE E. LONG
Judge

\* \* \* \*

MICHAEL D. BORNITZ
KENT R. CUTLER
KIMBERLY R. WASSINK of
Cutler Law Firm, LLP                   Attorneys for plaintiff and
Sioux Falls, South Dakota              appellant.

RONALD A. PARSONS, JR. of
Johnson, Janklow, Abdallah &           Attorneys for defendants and
   Reiter, LLP                         appellees.

MATTHEW S. MCCAULLEY
LISA M. PROSTROLLO
JON HANSEN of
Redstone Law Firm, LLP                 Attorneys for defendants and
Sioux Falls, South Dakota              appellees.

\* \* \* \*

ARGUED ON
NOVEMBER 8, 2017
OPINION FILED **02/14/18**

#27937, 27948

JENSEN, Justice

[¶1.]     This is the second appeal to this Court from a breach of contract action by Stern Oil Company, Inc. (Stern Oil) against James R. Brown (Brown). In *Stern Oil Co., Inc. v. Brown* (*Stern Oil I*), 2012 S.D. 56, 817 N.W.2d 395, Brown appealed a judgment awarding Stern Oil over eight years of lost profits exceeding $900,000. This Court reversed and remanded, determining the circuit court erred in granting summary judgment in favor of Stern Oil on its breach of contract claims against Brown and by denying Brown's fraud claims against Stern Oil. On remand, a jury found in favor of Stern Oil on the breach of contract and fraud claims and awarded $260,464 in damages. Stern Oil appeals that award, raising three issues for our review. Brown raises one issue by notice of review. We reverse and remand.

## Background

[¶2.]     Stern Oil is a fuel and petroleum distributor based in Freeman operated by Scott and Staci Stern and Scott's father, Gillas. The business supplies fuel at locations across the Midwest. Brown is a businessman from Gettysburg. Brown operates two convenience stores in North Sioux City, South Dakota: Goode to Go and Freeway Mobil.

[¶3.]     In 2005, Brown and Stern Oil entered into two ten-year Motor Fuel Supply Agreements (MFSAs) for Stern Oil to supply ExxonMobil branded fuel to Brown to sell at his two convenience stores. The MFSAs required Stern Oil to sell and deliver up to a contractually determined "Maximum Annual Volume" of fuel to Brown. Brown was obligated to purchase at least 75% of that amount annually.

-1-

Approximately a year and a half into the ten-year agreements, Brown stopped purchasing fuel from Stern Oil.

[¶4.] Stern Oil sued Brown for breach of contract. Brown counterclaimed and asserted that Stern Oil fraudulently induced him to enter into the MFSAs by verbally guaranteeing Brown a five-cent profit on each gallon of fuel sold at his convenience stores. Brown also asserted defenses to the validity of the MFSAs. The circuit court granted Stern Oil's motion for summary judgment on its claims for breach of contract and on Brown's fraud claims. The parties waived a jury on the issue of damages, and the case proceeded to a bench trial in October 2009 and January 2010. The circuit court awarded Stern Oil lost profits in the amount of $925,317. Brown appealed and this Court reversed in *Stern Oil I,* determining that genuine issues of material fact existed on Stern Oil's breach of contract claim and Brown's fraud claims. 2012 S.D. 56, ¶ 23, 817 N.W.2d at 403-04.

[¶5.] On remand to the circuit court, the matter proceeded to a jury trial on liability and damages. The jury found that Brown breached the MFSAs and rejected Brown's fraud claims and other contract defenses. The jury awarded Stern Oil lost profit damages in the amount of $260,464. Following the trial, Stern Oil moved for recovery of prejudgment interest. Stern Oil also moved for costs and attorney's fees under the terms of the MFSAs requiring the "non-prevailing party" to pay attorney's fees and costs to the "prevailing party." The circuit court determined that Stern Oil was not the prevailing party and denied attorney's fees or costs to either party. The circuit court entered a judgment on the jury's verdict and for prejudgment interest of $143,708.77 on the damage award.

[¶6.]     Stern Oil appeals the circuit court's judgment, raising three issues, which we reorder and restate as follows:

1.     Whether the circuit court erred in instructing the jury that Stern Oil's damages had to be foreseeable to Brown.

2.     Whether the circuit court erred by excluding Stern Oil's lost profit evidence.

3.     Whether the circuit court erred in determining that Stern Oil was not a prevailing party entitled to attorney's fees and costs.

[¶7.]     Brown's notice of review challenges the circuit court's award of prejudgment interest. Brown asks this Court to consider whether prejudgment interest was erroneously calculated.

## Analysis

**1.     Whether the circuit court erred in instructing the jury that Stern Oil's damages had to be foreseeable to Brown.**

[¶8.]     Stern Oil objected to the following damage instructions at trial:

**Instruction No. 30**: The measure of damages for a breach of contract is the amount which will compensate the aggrieved party for all determent legally caused by the breach, or which, in the ordinary course of things, would be likely to result from the breach. Damages for a breach of contract which are not clearly ascertainable in both their nature and origin are unrecoverable. Consequential damages must be reasonably foreseeable by the breaching party at the time of contracting. If consequential damages were not reasonably foreseeable, then they are not recoverable.

**Instruction No. 30A**: Consequential damages are damages that do not arise within the scope of the buyer-seller transaction, but rather stem from losses incurred by the non-breaching party in its dealings, often with third parties, which were a proximate result of the breach, and which were reasonably foreseeable by the breaching party at the time of contracting.

-3-

[¶9.]        Stern Oil claims it was reversible error for the circuit court to give these instructions.  It argues that lost profits resulting from an immediate payment discount given by ExxonMobil were recoverable as direct damages and not as consequential damages, and as such, the damages were not subject to a foreseeability requirement.  Brown contends that any profits arising from the discount received from ExxonMobil were consequential to the breach of the MFSAs because they were based upon a third-party contractual agreement between Stern Oil and ExxonMobil.  Brown was not a party to that agreement and claimed he was not aware of its terms.  He maintains the jury was properly instructed.  In the alternative, Brown claims that if an error occurred, it was harmless.

[¶10.]        In its complaint and at trial, Stern Oil asked for damages in the form of lost profits caused by Brown's breach of the MFSAs.  Stern Oil presented evidence showing that there were three sources of profit that Stern Oil would have earned under the MFSAs.  These sources of profit included: a 1.5-cent markup per gallon above the price paid by Stern Oil; profit earned by Stern Oil for transporting the fuel to Brown's convenience stores; and a 1.25% discount Stern Oil received from ExxonMobil for immediate payment on fuel Stern Oil purchased from ExxonMobil.

[¶11.]        At trial, Scott Stern (Stern) testified that the 1.25% prompt-payment discount received from ExxonMobil is a part of the total profit Stern Oil receives under the MFSAs.  Stern stated that when Stern Oil takes ExxonMobil fuel from a terminal, ExxonMobil debits Stern Oil's bank account for the cost of the fuel the next business day.  Thereafter, Stern oil receives a 1.25% credit off the purchase

price of the fuel. Stern also testified that Stern Oil is not given an option regarding the terms of the discount and that ExxonMobil has been providing Stern Oil with the prompt-payment discount for at least 15 years. Stern claimed that Stern Oil relies on the 1.25% discount to set the amount of its markup on fuel and freight charges.

[¶12.] The jury awarded lost profit damages to Stern Oil as follows: (1) $176,152 for gasoline; (2) $0 for diesel fuel; (3) $61,653 for freight; (4) $0 for the Stern Oil discount of 1.25%; and (5) $22,659 for BIP contract damages.[1] Stern Oil claims that the jury did not award lost profits from the 1.25% fuel discount because the circuit court erroneously instructed the jury on its lost profit claim.

[¶13.] A trial court has discretion in the wording and arrangement of its jury instructions, and therefore we generally review a trial court's decision to grant or deny a particular instruction under the abuse of discretion standard. However, no court has discretion to give incorrect, misleading, conflicting, or confusing instructions.

*Karst v. Shur-Co.*, 2016 S.D. 35, ¶ 8, 878 N.W.2d 604, 609 (quoting *Vetter v. Cam Wal Elec. Coop., Inc.*, 2006 S.D. 21, ¶ 10, 711 N.W.2d 612, 615). "Therefore, 'when the question is whether a jury was properly instructed overall, that issue becomes a question of law reviewable de novo.'" *Id.* (quoting *Vetter*, 2006 S.D. 21, ¶ 10, 711 N.W.2d at 615).

[¶14.] The Uniform Commercial Code (UCC), codified at SDCL Title 57A, applies to transactions in goods. SDCL 57A-2-102. Fuel sold under the MFSAs

---

1. The BIP contract damages were reimbursements under the MFSAs, which Stern Oil made to assist Brown in competing with other fuel retailers in the area.

qualifies as "goods" under the UCC definition, SDCL 57A-2-105(1), and both parties acknowledge that the UCC applies to this transaction. Under Title 57A, a seller's damages for breach of contract after nonacceptance or repudiation are generally measured by "the difference between the market price at the time and place for tender and the unpaid contract price[.]" SDCL 57A-2-708(1); *Vanderwerff Implement, Inc. v. McCance*, 1997 S.D. 32, ¶ 11, 561 N.W.2d 24, 25-26. Subsection (2) of SDCL 57A-2-708 provides an alternative measure of damages to a seller for nonacceptance or repudiation of a contract. Under subsection (2), if the contract/market price remedy is "inadequate to put the seller in as good a position as performance would have done then the measure of damages is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer[.]" SDCL 57A-2-708(2).

[¶15.] This Court has previously recognized that the alternative lost profit formula is available under SDCL 57A-2-708(2) to a "lost volume seller." *Vanderwerff*, 1997 S.D. 32, ¶ 11, 561 N.W.2d at 26 (quoting *Unique Designs, Inc. v. Pittard Mach. Co.*, 409 S.E.2d 241, 243 (Ga. Ct. App. 1991)). The determination whether a seller is a lost volume seller is generally a question of fact. *Bitterroot Int'l Sys., Ltd. v. W. Star Trucks, Inc.*, 153 P.3d 627, 641 (Mont. 2007); *Collins Entm't Corp. v. Coats & Coats Rental Amusement*, 629 S.E.2d 635, 637 (S.C. 2006); *Gianetti v. Norwalk Hosp.*, 833 A.2d 891, 901 (Conn. 2003); *Rodriguez v. Learjet, Inc.*, 946 P.2d 1010, 1014 (Kan. Ct. App. 1997). The circuit court instructed

the jury on the question whether Stern Oil was a lost volume seller.[2]  Stern Oil presented unrefuted evidence that it had an unlimited supply of fuel available from ExxonMobil and lost the opportunity to sell the volume of fuel it otherwise would have sold to Brown under the MFSAs.  The jury awarded lost profits to Stern Oil, and neither party has appealed the lost volume seller determination.

[¶16.]     Because Stern Oil established the factual basis to seek lost profits as the alternative measure of damages, the remaining question is whether the circuit court erred in instructing the jury on consequential damages and the foreseeability of Stern Oil's lost profits to Brown at the time of contracting.  The UCC does not distinguish between direct and consequential damages for lost profits claimed by a seller under SDCL 57A-2-708(2).[3]  Where the UCC is silent, SDCL 57A-1-103 allows other "principles of law and equity" to supplement the UCC's provisions.  Because

---

2.     The circuit court gave Instruction No. 31, requested by Stern Oil, which provided:

> Plaintiff may recover damages for the profits it lost if it establishes that it is a 'lost volume seller.'  To be a 'lost volume seller,' the plaintiff must prove that it had an unlimited supply of fuel, that there was an unlimited market for fuel, and that had the defendant purchased the minimum gallons of fuel required under the contracts, the plaintiff would have made two sales instead of one.

3.     SDCL 57A-1-715(2) provides for consequential damages to a buyer resulting from a seller's breach.  However, there is no similar consequential damages provision to a seller for a buyer's breach under SDCL 57A-1-708.  Brown argues that consequential damages are not available to a seller seeking lost profits under SDCL 57A-1-208(2).  However, it is unnecessary to resolve this issue because we determine that all the lost profits claimed by Stern Oil are direct damages.

-7-

the UCC does not address when lost profits are direct or consequential, we apply general contract law in determining this question.

[¶17.]    This Court has stated that "the ultimate purpose behind allowance of damages for breach of contract is to place the injured party in the position he or she would have occupied if the contract had been performed, or to 'make the injured party whole.'" *Ducheneaux v. Miller*, 488 N.W.2d 902, 915 (S.D. 1992) (citations omitted) (quoting *Hulstein v. Meilman Food Indus., Inc.*, 293 N.W.2d 889, 891 (S.D. 1980)); SDCL 21-2-1.  The amount of recovery may not exceed the amount the plaintiff would have gained if the contract had been fully performed.  *Id. (*quoting *Regan v. Moyle Petro. Co.*, 344 N.W.2d 695, 696 (S.D. 1984)).

[¶18.]    This Court has allowed a party to recover lost profits for breach of contract.  *Lamar Advert. of S. Dakota, Inc. v. Heavy Constructors, Inc.*, 2008 S.D. 10, ¶ 15, 745 N.W.2d 371, 376.  In general, to prove damages for lost profit, a plaintiff must establish "a reasonable relationship between the method used to calculate damages and the amount claimed."  *Id.* ¶ 14 (quoting *FB & I Bldg. Prod., Inc. v. Superior Truss & Components, A Div. of Banks Lumber, Inc.*, 2007 S.D. 13, ¶ 20, 727 N.W.2d 474, 480).  Damages must also be "reasonably certain and not speculative."  *Id.*  Further, we have required that damages be a direct consequence of the breach of contract and reasonably within the contemplation of the parties at the time of making the contract.  *See Mash v. Cutler*, 488 N.W.2d 642, 651 (S.D. 1992).  To this end, "[c]onsequential damages must be reasonably foreseeable by the breaching party at the time of contracting."  *Colton v. Decker*, 540 N.W.2d 172, 177 (S.D. 1995).  We have not, however, had an occasion to address the distinction

between lost profits as direct or consequential damages. A number of courts have wrestled with this question.

[¶19.] In *Atlantech Inc. v. American Panel Corp.*, 743 F.3d 287, 289 (1st Cir. 2014), a buyer sought lost profit damages for breach of an agreement in which seller agreed to sell and support aircraft LCD displays. The buyer's damages consisted of lost sales of the LCD displays to a third party. *Id.* at 293. The First Circuit Court of Appeals determined these damages were consequential because they were not "necessarily inherent in the contract." *Id.* at 294.

[¶20.] Applying Georgia law, the court stated that the term *lost profits* may include damages that are both direct and consequential to the contract and set forth the distinction between those two types of damages.

> Consequential damages, which may include "profits which might accrue collaterally as a result of the contract's performance," are a separate concept from direct damages, which may include "profits necessarily inherent in the contract." Thus there are two types of lost profits: (1) lost profits which are direct damages and represent the benefit of the bargain (such as a general contractor suing for the remainder of the contract price less his saved expenses), and (2) lost profits which are indirect or consequential damages such as what the user of the MRI would lose if the machine were not working and he was unable to perform diagnostic services for several patients.

*Id.* at 293 (quoting *Imaging Sys. Int'l, Inc. v. Magnetic Resonance Plus, Inc.*, 490 S.E.2d 124, 127 (Ga. Ct. App. 1997)).

[¶21.] In *Biotronik A.G. v. Conor Medsystems Ireland, Ltd.*, 11 N.E.3d 676, 679 (N.Y. 2014), the reseller of medical stents manufactured by the defendant claimed lost profits for breach of contract by defendant. The trial court granted summary judgment under the contractual provision excluding consequential

damages, determining that the claimed lost profits were consequential damages because the damages stemmed from lost resale profits to third parties. *Id.* The New York Court of Appeals reversed, holding that the profits were direct to the contract. *Id.* at 682-83.

[¶22.]     The Court stated that "lost profits are consequential damages 'when, as a result of the breach, the non-breaching party suffers loss of profits on *collateral* business relationships.'" *Id.* at 681 (emphasis added) (quoting *Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*, 650 F. Supp. 2d 314, 322 (S.D.N.Y. 2009)). The court also specified that a plaintiff could recover lost profits as direct damages when the damage was "'caused by the breach,' or under 'an existing resale contract,' or under an 'exclusive distributorship agreement[.]'" *Id.* (quoting *Compania*, 650 F. Supp. 2d at 322). The *Biontronik* court emphasized that the most important distinction to be made between direct and consequential profits is "whether the lost profits flowed directly from the contract itself or were, instead, the result of a separate agreement with a nonparty[.]" *Id.* at 681. Applying its approach to the agreement between the parties, the *Biotronik* court determined that because the *agreement contemplated* that plaintiff would resell the stents and was part of a joint venture between the parties for such a resale, the lost profits were direct and not consequential. *Id.* at 682-83.

[¶23.]     In *SOLIDFX, LLC v. Jeppesen Sanderson, Inc.*, 841 F.3d 827 (10th Cir. 2016), *cert. denied*, No. 16-1303, 2017 WL 1550710 (U.S. Oct. 2, 2017), a software developer entered into a preliminary agreement with a maker of aviation terminal charts, used to guide pilots in landing at various airports, to create applications for

electronic devices to display the terminal charts. *Id.* at 831. After the aviation chart maker failed to perform on the agreement, the software developer sued for breach of contract and other claims. *Id.* The district court concluded that some of the lost profits the software developer would have earned from the applications were direct damages, while other profits from the applications were consequential. *Id.* A jury awarded substantial lost profits as direct damages to the software maker. *Id.* at 832. The Tenth Circuit Court of Appeals reversed, determining as a matter of law that all the lost profits claimed by plaintiff were consequential damages. *Id.* Applying Colorado law, the Tenth Circuit stated:

> Direct damages refer to those which the party lost from the contract itself—in other words, the benefit of the bargain—while consequential damages refer to economic harm beyond the immediate scope of the contract. *Lost profits, under appropriate circumstances, can be recoverable as a component of either (and both) direct and consequential damages.*

*Id.* at 839 (emphasis in original) (quoting *Penncro Assocs., Inc. v. Sprint Spectrum, L.P.*, 499 F.3d 1151, 1156 (10th Cir. 2007)).

[¶24.] Thus, while it is true that lost profits may fall within the larger category of consequential damages, lost profits that flow directly from the contract itself are properly characterized as direct damages. They are damages that reflect a party's loss of the benefit of the bargain from the agreement between the parties, not other economic harm caused by agreements collateral to the contract. The determination whether lost profits are direct or consequential is a question of law for the court considering the terms of the agreement.

[¶25.] Here, the MFSAs created a franchise relationship between Stern Oil and Brown, which granted Brown the right to use ExxonMobil proprietary

marketing material and sell the ExxonMobil-branded fuel.  Brown acknowledged under the terms of the MFSAs that Stern Oil had a distributor relationship with ExxonMobil, which allowed Stern Oil to purchase ExxonMobil branded fuel and sell this fuel to Brown.  Stern Oil's relationship with ExxonMobil was an integral part of Brown's ability to use ExxonMobil's proprietary marks and purchase the ExxonMobil-branded fuel under the MFSAs.  Most importantly, all the profits claimed by Stern Oil arose from the sale of the fuel by Stern Oil to Brown under the MFSAs and included monies that were to be paid by Brown to Stern Oil.

[¶26.]     The lost profits claimed by Stern Oil are direct damages, not consequential damages.  This is true whether the profits consisted of the markup on the fuel, the discount for immediate payment, or freight charges under the MFSAs.  Instructions No. 30 and 30A instructing the jury on consequential damages were erroneous given that all the lost profits sought by Stern Oil were direct to the MFSAs.  Because the lost profit damages flowed directly from the MFSAs, Stern Oil did not have an obligation to show foreseeability.  We require a non-breaching party to show that consequential damages were foreseeable to the breaching party at the time of the contracting.  *Colton*, 540 N.W.2d at 177.  In contrast, direct damages for breach of contract do not have an element of foreseeability because they are, by their very nature, foreseeable by the parties at the time of contracting.

[¶27.]     Under the franchise relationship created by the MFSAs, it was foreseeable to Brown that Stern Oil expected to earn a profit from the fuel supplied to Brown.  The MFSAs required Brown to "use good faith and best efforts to maximize the sale" of fuel at his convenience stores and required Brown to purchase

at least 75% of the Maximum Annual Volume of fuel. These provisions put Brown on notice that Stern Oil expected to earn a profit under the MFSAs and enhance its profit as Brown sold a larger volume of fuel. The fact that Brown did not have knowledge of how Stern Oil calculated its profits or the specific price terms between ExxonMobil and Stern Oil for the fuel Stern Oil resold to Brown under the MFSAs did not mean that lost profits were not foreseeable to Brown. To require such knowledge in business transactions would be antithetical to the arms-length bargaining process.[4]

[¶28.] The error in Instructions No. 30 and 30A was not harmless. Because the evidence showed that Brown did not know about the 1.25% discount, the jury certainly could have concluded from these instructions that it should not award any damages for the discount. Stern Oil's lost profit claim is remanded for a new trial on damages to include claims for the 1.5-cent-per-gallon markup on gasoline, the freight for the gasoline, and the 1.25% discount on the gasoline.[5]

### 2. Whether the circuit court erred by excluding Stern Oil's lost profit evidence.

[¶29.] Prior to trial, Brown objected to portions of the proposed damage testimony from Stern Oil's expert, Dr. Ralph Brown (Dr. Brown). In an economic loss appraisal prepared for Stern Oil, Dr. Brown created four alternative models to

---

4. This does not in any way diminish claims of fraud or misrepresentation by a party in the negotiating process, but those claims were determined adverse to Brown by the jury.

5. The jury rejected Stern Oil's claims for diesel sales, apparently determining Stern Oil had released Brown's contractual obligation to purchase diesel fuel under the MFSAs. Stern Oil has not challenged the jury's determination denying damages for diesel sales.

calculate Stern Oil's alleged future lost profits over the remaining term of the MFSAs. These damage calculations were based on the volume of fuel that Stern Oil projected it would have sold to Brown during the remaining term of the MFSAs. The circuit court excluded three of the models. Thus, Stern Oil was limited to presenting evidence of lost profit damages under a fourth model, which was based on 75% of the fuel Brown actually purchased from Stern Oil in the first year under the MFSAs.

[¶30.]     Stern Oil argues the circuit court erred by excluding Dr. Brown's other three damage calculation models and the evidence supporting those models. The three excluded scenarios were based on: (1) Brown purchasing (and selling) 100% of the projected Maximum Annual Volume of fuel under the MFSAs; (2) Brown purchasing 75% of the projected Maximum Annual Volume under the MFSAs; and (3) the actual amount of fuel sold to Brown in the first twelve months of the MFSAs. Stern Oil argues that all three excluded scenarios were supported by evidence and that the circuit court erred in not allowing Stern Oil to present each of these other models.

[¶31.]     Brown argues the circuit court's ruling properly recognized the contractual language that Stern Oil was obligated to sell the Maximum Annual Volume of fuel under the MFSAs, while Brown was only obligated to purchase 75% of the Maximum Annual Volume. As noted by Brown, if he had only purchased that amount and nothing more, he would not have been in breach of the MFSAs. Thus, that minimum amount would constitute full performance, and Stern Oil is not entitled to recover anything greater.

[¶32.]        Stern Oil's offer of proof shows that Stern would have testified concerning the projected volume of fuel that Brown would have purchased over the 10 years of the MFSAs.  From these projections, Dr. Brown calculated the four damage models.  Stern testified that he regularly made fuel sales projections for Stern Oil's franchise dealers such as Brown and that these projections served as the basis for the volumes set forth in the MFSAs for Brown and other fuel retailers.  Stern presented evidence that he projected the initial Maximum Annual Volume of fuel that Stern Oil was obligated to sell Brown during the first year of the MFSAs at 1.38 million gallons and 1.5 million gallons, respectively, for a total of approximately 2.88 million gallons of fuel annually.  The evidence shows that Brown purchased approximately 2.4 million gallons of fuel at his convenience stores during the first year of the MFSAs.  This was more than the 75% Brown was obligated to purchase during the first year of the MFSAs.

[¶33.]        Stern also testified that he believed Brown would have continued to increase the annual amount of fuel sold over the remaining term of the MFSAs if Brown had not breached these agreements with Stern Oil.  Stern based this testimony on his experience with many other Stern Oil franchisees.  Stern testified that none of their current franchisees were purchasing less than the minimum contractual requirement of 75% of the Maximum Annual Volume and most were "far exceeding that number."  Stern also testified that over half of Stern Oil's current franchisees were exceeding the Maximum Annual Volume requirements, and all of them were within a "percentage point or two" of the 100% number.

[¶34.]     In refusing Stern Oil's offer of proof on damages, the circuit court concluded that Stern Oil could not recover anything more than "the minimum performance that was required by the defendant." The circuit court's evidentiary ruling limited Stern Oil's recovery for future damages to no more than 75% of the actual fuel sales that Stern Oil sold to Brown during the first year of the MFSAs.

[¶35.]     A circuit court's evidentiary rulings are presumed to be correct and reversed only if there is an abuse of discretion. *Table Steaks v. First Premier Bank, N.A.*, 2002 S.D. 105, ¶ 36, 650 N.W.2d 829, 838. "Pursuant to SDCL 21-2-1, damages for breach of contract consist of the amount that will compensate the aggrieved party for all of the detriment caused by, and that are the likely result of, the breach." *Lamar*, 2008 S.D. 10, ¶ 14, 745 N.W.2d at 376. Evidence of future lost profits are admissible as long as those damages are reasonably certain and not speculative. *Id.* ¶ 24, 745 N.W.2d at 380. We have stated that "[o]nce the fact of damages has been established, uncertainty over the amount of damages is not fatal to recovery." *Bailey v. Duling*, 2013 S.D. 15, ¶ 35, 827 N.W.2d 351, 363. "Damages are speculative, not when the amount is uncertain, but when the fact of damages is uncertain." *Id.*

[¶36.]     Stern Oil sold 2.4 million gallons of fuel to Brown during the first year of the MFSAs. Yet the circuit court limited Stern Oil to claiming future damages of 75% of the fuel Brown purchased during the first year, or 1.8 million gallons annually, rather than the actual sales made by Stern Oil during the first year of the MFSAs. The third scenario that the circuit court excluded would have permitted Stern Oil to present evidence of damages to the jury based on the actual sales to

Brown during the first year of the MFSAs. Stern Oil's other two excluded damage scenarios used future projections that exceeded the historical sales of fuel during the first year. These projections were based upon Stern Oil's experience with other similar dealers under other MFSAs and expected future increases in the volume of fuel purchased.

[¶37.]      The circuit court's decision to exclude evidence of these other damage models was based primarily on its determination that Brown would have been able to fully perform under the remaining term of the MFSAs by purchasing 75% of the actual first year fuel sales. This reading of the MFSAs assumed that the Maximum Annual Volume, and thus Brown's 75% minimum purchase requirement, was static and would never change under the remaining term of the MFSAs. This reading is inconsistent with section 4(b) of each MFSA:

> For each month of the remaining contract years, the Maximum Monthly Volume for the current month shall be the greater of actual volume in the prior month or actual volume in the current month of the prior year purchased by Franchise Dealer from Distributor. The Maximum Annual Volume for the current contract year will be the sum of the Maximum Monthly Volumes in the current contract year.

[¶38.]      Under section 4(b), the Maximum Annual Volume was recalculated annually by adding the sum of the Maximum Monthly Volumes, which could change monthly based upon actual fuel sales. Stern Oil sought to introduce evidence that these projected volumes would increase in future years, which would in turn increase Brown's minimum purchase requirements. We give no deference to the circuit court's reading of a contract as contract interpretation is a question of law that is reviewed de novo. *Tri-City Assocs., L.P. v. Belmont, Inc.*, 2014 S.D. 23, ¶ 9,

845 N.W.2d 911, 915. The circuit court erred in reading the MFSAs to limit Brown's contractual obligation, over the remaining eight-plus years, to purchasing 75% of the first year's Maximum Annual Volume of fuel.

[¶39.] Additionally, once Stern Oil presented evidence that Brown had breached the MFSAs and that Stern Oil had been damaged, the question for the jury was not the minimum required performance for Brown, but rather the reasonable amount of profit that Stern Oil could have expected to earn over the remaining term of the MFSAs if Brown had not breached a year and one-half into the MFSAs. Based on the factual predicate in Stern Oil's offer of proof, it was a question for the jury whether any or portions of the four damage models premised on past sales and future projections accurately reflected Stern Oil's damages. It was error for the circuit court to exclude this evidence as a matter of law.

[¶40.] Brown argues that under SDCL 21-1-5, Stern Oil could not recover more than 75% of the Maximum Annual Volume, under any scenario, because Brown would have been in full compliance with the MFSAs if he purchased at least 75% of the Maximum Annual Volume. SDCL 21-1-5 provides:

> Notwithstanding the provisions of these statutes, no person can recover a greater amount in damages for the breach of an obligation than he could have gained by the full performance thereof on both sides, except in the cases specified in statutes providing exemplary damages or penal damages, and in statutes relating to damages for breach of promise to marry, for seduction, or wrongful injuries to animals.

[¶41.] This statute limits the damages that a party may recover for breach of contract to the amount that the non-breaching party "could have gained by the full performance thereof on both sides." SDCL 21-1-5. Full performance by both parties under the MFSAs, absent the breach, would have been for Stern Oil to sell up to the

Maximum Annual Volume of fuel and Brown to pay for that volume of fuel. This established the maximum amount of damages under SDCL 21-1-5 that Stern Oil could have gained under the MFSAs. All four future damage scenarios, if the jury believed the projections, were within this statutory maximum.

[¶42.] On remand, Stern Oil should be permitted to present evidence to the jury on all four of the future scenarios.

> **3. Whether the circuit court erred in determining that Stern Oil was not a prevailing party entitled to attorney's fees and costs.**

[¶43.] Stern Oil claims it is entitled to attorney's fees and costs for this litigation under the terms of the MFSAs. Because we remand for a new trial on damages, the circuit court's determination that Stern Oil is not a prevailing party is arguably moot. However, because the issue may arise again on remand, we discuss this issue to provide the circuit court and parties with guidance.

[¶44.] Section 32 of both MFSAs provide:

> **Attorney's Fees**. In any litigation between the parties to enforce any provision or right under this agreement, the non-prevailing party covenants and agrees to pay to the prevailing party all costs and expenses incurred by the prevailing party in connection with the litigation, including, but not limited to reasonable attorney's fees.

[¶45.] South Dakota follows the American rule of attorneys' fees, which provides that each party is responsible for their own fees. *Arrowhead Ridge I, LLC v. Cold Stone Creamery, Inc.*, 2011 S.D. 38, ¶ 25, 800 N.W.2d 730, 737. "But an award of attorneys' fees is allowed when authorized by the parties' agreement or by statute." *Id.*; *see also* SDCL 15-17-38. "Thus, even if no statute authorizes an award of attorneys' fees, 'they are recoverable if the parties' contract so provides.'"

*Id.* (quoting *Credit Collection Servs., Inc. v. Pesicka,* 2006 S.D. 81, ¶ 6, 721 N.W.2d 474, 477). "The party requesting an award of attorneys' fees has the burden to show its basis by a preponderance of the evidence." *Id.*

[¶46.]     The MFSAs require the non-prevailing party to pay the attorney's fees and costs to the prevailing party in the litigation. The agreements do not further define the term *prevailing party.* Stern Oil claims the circuit court abused its discretion in determining that it was not the prevailing party because the jury rejected Brown's claims of fraud, estoppel, mistake, and negligent misrepresentation; found Brown breached the MFSAs; and awarded Stern Oil damages and prejudgment interest. Brown argues the circuit court did not abuse its discretion because Brown prevailed on two major issues at trial: whether Stern Oil was entitled to lost profit damages for a 1.25% discount on motor fuel; and whether Stern Oil was entitled to lost profit damages for diesel fuel. Brown also notes that he prevailed in his motion to limit the testimony of Stern Oil's expert witness, which resulted in a reduction of Stern Oil's damages.[6]

[¶47.]     We review a circuit court's determination as to the prevailing party and the award of costs and disbursements under an abuse of discretion standard. *Hewitt v. Felderman,* 2013 S.D. 91, ¶ 28, 841 N.W.2d 258, 266. "An abuse of discretion 'is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary and

---

6.     Although we reverse and remand the damage issue, we review the circuit court's prevailing party determination based on the result before the circuit court at the time it reviewed the issue.

unreasonable.'" *Erickson v. Earley*, 2016 S.D. 37, ¶ 8, 878 N.W.2d 631, 634 (quoting *Blair-Arch v. Arch*, 2014 S.D. 94, ¶ 10, 857 N.W.2d 874, 877).  The interpretation of a contract is a question of law for the court and no presumption exists in favor of the circuit court's determination on a contract.  *Cotton v. Manning*, 1999 S.D. 128, ¶ 15, 600 N.W.2d 585, 588.

[¶48.]     We have defined the term "prevailing party" under the costs statute in SDCL 15-17-37 to mean "the party in whose favor the decision or verdict is or should be rendered and judgment entered." *Hewitt*, 2013 S.D. 91, ¶ 28, 841 N.W.2d at 266 (quoting *Picardi v. Zimmiond*, 2005 S.D. 24, ¶ 16, 693 N.W.2d 656, 661).  In *Crisman v. Determan Chiropractic, Inc.*, 2004 S.D. 103, ¶ 23, 687 N.W.2d at 513, we applied the same definition to an employment agreement providing for attorney's fees to the prevailing party that did not otherwise define the term "prevailing party."  Since the MFSAs between Stern Oil and Brown do not define the term "prevailing party," we apply this definition to the term "prevailing party" under the MFSAs.

[¶49.]     The circuit court concluded that Stern Oil was not the prevailing party because it was awarded over $900,000 in the first trial, but the jury only awarded $260,464 in the second trial.  The circuit court also considered that Stern Oil "lost on two significant issues at trial."  This included the 1.25% discount that Stern Oil received from ExxonMobil and the claim for damages for diesel fuel sales.  The circuit court initially set forth the definition of "prevailing party" from *Crisman*, but concluded there was no prevailing party because "both parties gained victories and suffered losses."  In determining that Stern Oil was not the prevailing party, the

circuit court cited a Montana case arising from a divorce, which concluded that a former spouse receiving a reduced child support award was not the prevailing party. *In re Marriage of Hebert*, 840 P.2d 584, 586 (Mont. 1992). Citing *Marriage of Hebert*, the circuit court stated, "The mere fact that Stern Oil was awarded a monetary judgment does not necessarily make them the successful or prevailing party as no one factor determines who the prevailing party is."

[¶50.] On the contrary, in South Dakota, the party in "whose favor the decision or verdict is or should be rendered and judgment entered" is the primary consideration in determining the prevailing party. *Geraets v. Halter*, 1999 S.D. 11, ¶ 20, 588 N.W.2d. 231, 235 (quoting *City of Aberdeen v. Lutgen*, 273 N.W.2d 183, 185 (S.D. 1979)). Under this definition, we are hard pressed to find cases where we have affirmed a circuit court's decision that determined a party receiving a monetary judgment was not the prevailing party. One such case is *Gereats v. Halter*, 1999 S.D. 11, ¶ 21, 588 N.W.2d. at 235, where we affirmed a circuit court's determination that a plaintiff receiving a small monetary judgment was not the prevailing party because the plaintiff's primary claim of specific performance was denied and the defendant did not object to the small monetary award to the plaintiff.

[¶51.] Additionally, we have also affirmed a number of cases, under the abuse of discretion standard, where the circuit court for various reasons denied costs and attorney's fees provided for by *statute*, even though a party met the definition of the term *prevailing party*. *See Culhane v. Michels*, 2000 S.D. 101, ¶ 33, 615 N.W.2d 580, 590 (affirming a circuit court's decision denying statutory costs and

disbursements under SDCL 15-17-37 and 15-17-52 because "a court is not required to grant recovery for disbursements simply because a party has achieved the status of a prevailing party"); *Hewitt*, 2013 S.D. 91, ¶ 30, 841 N.W.2d at 266 (holding that even if a party is the prevailing party, "the trial court has broad discretion under SDCL 15-17-52 to limit statutory disbursements to a prevailing party"); *Full House, Inc. v. Stell*, 2002 S.D. 14, ¶ 25, 640 N.W.2d 61, 67 (holding a circuit court has discretion to deny statutory disbursements, in the interests of justice, under SDCL 15-17-52, even where a party prevails in its entirety on a motion for summary judgment); *Michlitsch v. Meyer*, 1999 S.D. 69, ¶¶ 12-15, 594 N.W.2d 731, 734 (determining the party against whom a personal injury action was voluntarily dismissed was the prevailing party but affirming the trial court's decision denying statutory disbursements as discretionary).

[¶52.] Unlike *statutory* costs and disbursements to a prevailing party, the terms of the contract control the consideration of attorney's fees and costs provided for agreement between the parties. *See DocMagic, Inc. v. Mortg. P'ship of Am., L.L.C.*, 729 F.3d 808, 812 (8th Cir. 2013) (observing that a trial court must comply with the term of a contract and award attorney's fees to the prevailing party).[7] SDCL 15-17-38 provides:

---

7. In this case, the MFSAs provide for payment of reasonable costs and attorney's fees. The circuit court has discretion to determine the amount of costs and attorney's fees that are reasonable. In assessing reasonableness, the circuit court must consider a number of factors, including the result obtained and:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that

(continued . . .)

*The compensation of attorneys and counselors at law for services rendered in civil and criminal actions and special proceedings is left to the agreement, express or implied, of the parties.* However, attorneys' fees may be taxed as disbursements if allowed by specific statute. . . .

(Emphasis added.)

[¶53.] In making its prevailing party determination, the circuit court focused primarily on the difference in the damages awarded to Stern Oil in the first and second trials without addressing why the significant damage award did not meet the definition of prevailing party. Further, the court did not adequately consider a number of significant facts. First, the jury found in favor of Stern Oil on its sole claim: breach of contract. The jury also rejected all of Brown's contract formation defenses and fraud claims. On damages, the jury appears to have awarded substantially all the future damages that Stern Oil sought for the markup on gasoline and transportation of the gasoline over the remaining 8.5 years of the MFSAs by entering a verdict in excess of $240,000. The damages awarded for

---

(. . . continued)

> the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

*Eagle Ridge Estates Homeowners Ass'n, Inc. v. Anderson*, 2013 S.D. 21, ¶ 28, 827 N.W.2d 859, 867 (quoting *In re S.D. Microsoft Antitrust Litig.*, 2005 S.D. 113, ¶ 29, 707 N.W.2d 85, 98). "No single factor determines whether attorney fees should be awarded, 'but rather all of the factors should be taken into consideration in determining a reasonable fee.'" *Id.* (quoting *Microsoft*, 2005 S.D. 113, ¶ 29, 707 N.W.2d at 98). "However, before considering any of the factors listed above, the calculation of attorney fees must begin with the hourly fee multiplied by the attorney's hours." *Id.* (quoting *Microsoft*, 2005 S.D. 113, ¶ 30, 707 N.W.2d at 98).

breach of contract were significant and were in no sense nominal. After the jury returned its verdict, the circuit court entered a judgment in favor of Stern Oil on the verdict. The award by the jury undoubtedly meets this Court's definition of a prevailing party as "the party in whose favor the decision or verdict is or should be rendered and judgment entered." *Geraets*, 1999 S.D. 11, ¶ 20, 588 N.W.2d at 235 (quoting *Lutgen*, 273 N.W.2d at 185). The circuit court abused its discretion in determining that Stern Oil was not the prevailing party.

### 4.    Whether prejudgment interest was erroneously calculated.

[¶54.]    Pursuant to a notice of review, Brown appeals the circuit court's calculation of prejudgment interest. He argues the circuit court erred in calculating prejudgment interest from the date that Brown first breached the contract on May 8, 2007, since the future damages awarded by the jury would have been sustained over the remaining term of the MFSAs. Stern Oil asserts that Brown failed to object to prejudgment interest at the circuit court level and that prejudgment interest was properly calculated. Other than a general objection to Stern Oil's motion for prejudgment interest, Brown's trial counsel's only objection to prejudgment interest was that it should not begin to accrue until after this Court's remand in *Stern Oil I*. We reject Brown's claim that the date of remand in *Stern Oil I* triggers the accrual of prejudgment interest. Prejudgment interest accrues from the date of the loss or damage. SDCL 21-1-13.1. The date of remand does not impact the accrual of prejudgment interest. Considering our decision remanding this case for a new trial on damages and Brown's general objection to prejudgment interest, the Court declines to address the other issues raised by Brown as to

whether the prejudgment interest under SDCL 21-1-13.1 was properly calculated on the future damages awarded in this case.

## Conclusion

[¶55.] The circuit court erred when it instructed the jury on consequential damages and the foreseeability of Stern Oil's lost profits to Brown at the time of contracting. The court also erred by excluding Stern Oil's evidence on the four damage scenarios. Because of these errors, we reverse the jury's verdict as it relates to the award for "Motor Fuel" and "Stern Oil Discount of 1.25%" and remand for a new trial on Stern Oil's damages for lost profits on gasoline consistent with this Court's decision. The circuit court's decision that Stern Oil was not the prevailing party is also reversed. On remand, the prevailing party should be determined consistent with this opinion. The jury's decision awarding BIP contract damages to Stern Oil in the amount of $22,659 and denying Stern Oil's lost profits claim for diesel fuel is considered final and neither claim shall be retried. Following the trial on remand, the circuit court shall enter judgment accordingly on these two claims, on the determination made on Stern Oil's claims for lost profits on gasoline, and on any request for attorney's fees, costs, and prejudgment interest.

[¶56.] GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and KERN, Justices, concur.