#30173-a-PJD
**2023 S.D. 34**


IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

THOMAS R. WRIGHT,                                     Plaintiff and Appellee,

   v.

CURTIS TEMPLE,                                     Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE HEIDI LINNGREN
Judge

\* \* \* \*

KENNETH E. BARKER
Belle Fourche, South Dakota                    Attorney for plaintiff
                                               and appellee.


JAMES P. HURLEY
Rapid City, South Dakota                       Attorney for defendant
                                               and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
APRIL 25, 2023
OPINION FILED **07/12/23**

#30173

DEVANEY, Justice

[¶1.]     This is the second appeal concerning damage caused to an airplane owned by Thomas Wright.  In the first appeal, we concluded that the circuit court erred in instructing the jury on damages and that the error prejudiced the defendant, Curtis Temple.  *Wright v. Temple* (*Wright I*), 2021 S.D. 15, ¶¶ 47, 53, 956 N.W.2d 436, 452–53.  On remand for a new trial on the limited issue of damages, the circuit court issued a memorandum decision awarding Wright $131,735.67 in damages, prejudgment interest, and costs.  Temple appeals, challenging the court's damages award and decision to award prejudgment interest.  In response to an order to show cause by this Court, Temple and Wright also address the question whether we lack appellate jurisdiction because Temple did not serve the notice of the appeal and docketing statement on a third-party defendant.  We conclude we have jurisdiction and affirm on the merits.

**Factual and Procedural Background**

[¶2.]     Because the issues in this appeal are limited to the circuit court's award of damages and prejudgment interest and this Court's appellate jurisdiction, only the factual and procedural history relevant to those issues will be related.  A more detailed summary of the evidence and testimony presented in the original trial relating to the underlying claims can be found in *Wright I*, 2021 S.D. 15, 956 N.W.2d 436.

[¶3.]     Wright was the owner of a 1978 Citabria airplane that he listed for sale in a trade publication for $75,000.  Temple learned that the plane was for sale and arranged a meeting in June 2014 with Wright's agent, Ted Miller, to discuss

-1-

purchasing the plane for use on his ranch. Temple was not a pilot, but there was a hangar and dirt runway on his property, and he wanted to learn how to fly. Miller agreed to allow Temple to rent the plane while considering whether to purchase it and while learning how to fly it. This agreement was contingent on Temple obtaining insurance coverage for the plane and employing a licensed pilot as his instructor.

[¶4.] Temple hired Ken Merrill to be his flight instructor. After a few sessions, Merrill determined that Temple could assume more control of the airplane, but before allowing him to do so, he asked Temple whether he had obtained insurance coverage for the plane. Although Temple assured him that he had, it is undisputed that he never obtained such insurance.

[¶5.] On July 25, 2014, during one of his flying sessions with Merrill, Temple had control of the plane while taxiing on the runway and during takeoff. As they attempted to take off, Merrill noticed that Temple was not accelerating the plane as he should, so Merrill applied full power to the throttle in an attempt to reach the necessary flight speed. This attempt was not successful, and the plane crashed into a ravine at the end of the runway. The crash caused significant damage to the plane.

[¶6.] After the accident, Wright contacted Temple multiple times to request compensation for the plane, but each time he called, Temple would hang up. Ultimately, Wright decided to repair the Citabria and spent $79,083.02 in doing so. Once Wright repaired the plane, he sold it on May 25, 2016, for $52,500, which he

claimed was less than the fair market value of the plane. Wright testified that he sold the plane so he could stop the ongoing expense of owning it.

[¶7.]	Eventually, Wright filed suit against Temple, and in his amended complaint filed in 2016, he asserted causes of action for negligence, breach of contract, promissory estoppel, deceit, fraud, and conversion. Temple filed a third-party complaint against Merrill, alleging negligence and seeking contribution in the event he was found liable for damages to Wright. In his answer, Merrill asserted counterclaims against Temple, seeking damages for negligence, deceit, fraud, breach of contract, and promissory estoppel.

[¶8.]	After a three-day trial in February 2019, the jury found in favor of Wright on his claims against Temple for negligence, breach of contract, and deceit and awarded him $34,144.84 on each claim. The jury did not find Merrill to be a joint tortfeasor; it instead found Temple liable to Merrill for breach of contract, deceit, and fraud but did not award him any damages. In a post-trial motion, Temple requested a new trial asserting multiple issues. Relevant here, he claimed that the amount of damages the jury awarded on each claim should not be aggregated and instead that the $34,144.84 amount reflected the total damages awarded because the damages were the same under each of Wright's alternative legal theories. In response, Wright asserted that the amounts awarded on each separate claim should be added together to arrive at the total award. The circuit court denied Temple's motion for a new trial but resolved the parties' damages dispute by accepting Wright's argument. The court entered a judgment in the amount of $102,434.52, plus prejudgment and post-judgment interest and costs.

[¶9.]     Temple appealed, raising multiple issues, including that the circuit court erred in instructing the jury on damages and in determining the total award due to Wright. At trial, the parties had proposed two different instructions on damages. Temple objected to Wright's proposed instruction, claiming that it did not set forth the proper measure of damages and that it improperly instructed the jury to arrive at *separate* awards under different legal theories for the *same* claimed damages. Wright argued that both his and Temple's instructions were proper, and the circuit court ultimately gave both parties' instructions over Temple's objection.

[¶10.]     On appeal, we concluded that Wright's proposed instruction contained an erroneous statement of the law and was inconsistent with Temple's proposed instruction. In particular, we noted:

> First, unlike [Temple's instruction], [Wright's proposed instruction] did not include the general measure of property damage encompassed in SDCL 21-1-6 (difference in fair market value before and after the event in question) and, instead, only provided the alternative measure of damages, which appears to be based upon the cost of repair plus depreciation. Second, it fails to include the limiting term "reasonable" when referring to the cost of repair, a concept born out of the case law which is the genesis of this alternative measure of damages. Third, and perhaps most problematic, is the . . . paragraph . . ., which directed the jury to subtract the amount Wright received from the sale of the plane—purportedly to arrive at an amount representing the diminution in value of the plane after repair— despite the fact Wright had conceded at trial that he sold the plane for an amount *below* its fair market value. Subtracting this amount received from the subsequent sale would have reduced the offset and artificially increased the damage amount. It was up to the jury, as the finder of fact, to determine the fair market value of the plane both before and after the crash based upon the evidence received at trial.

*Wright I*, 2021 S.D. 15, ¶ 46, 956 N.W.2d at 451–52.

[¶11.]        We further concluded that Temple was prejudiced by the circuit court's erroneous instruction and decision to aggregate the jury's separate but identical $34,144.84 awards for a total damage award of $102,434.52. *Id.* ¶ 50, 956 N.W.2d at 452. We therefore remanded for "a new trial on the limited issue of damages . . . to allow the finder of fact to apply the proper law when determining the compensation due to Wright." *Id.* ¶ 53, 956 N.W.2d at 453. We affirmed on all the other issues Temple raised pertaining to the jury's liability determinations.

[¶12.]        On remand, a jury trial was originally scheduled for June 13, 2022, to determine the issue of Wright's damages, but Wright and Temple filed a joint motion requesting that the circuit court, "[i]n the interest of judicial economy and efficiency," decide the issue of damages on the existing record, the parties' proposed stipulated facts, and written arguments. After considering the motion, the court entered an order cancelling the scheduled jury trial and adopting Wright and Temple's proposed procedure for determining the issue of damages. The court noted that the parties waived the presentation of further live witness testimony and waived submission of findings of fact and conclusions of law.

[¶13.]        In his submissions, Wright asserted that the fair market value of the Citabria before the accident was $75,000 and that after the accident it had a $3,000 salvage value. He based the $3,000 salvage value on his trial testimony that after the accident, but prior to the plane being repaired, the plane had a salvage value between $2,000 and $4,000. Wright requested that the circuit court award him $72,000 in damages as well as $68,195.82 in prejudgment interest at the statutory

rate from July 25, 2014 (the date of the accident) to June 13, 2022 (the original date of the jury trial on remand), and $2,904.99 in costs.

[¶14.]     In his submissions, Temple agreed that the proper measure of damages would be the difference in the fair market value of the Citabria before and after the accident. However, he asserted that "[t]he salvage value does not apply in determining damages because Wright testified that after the 2014 crash, he elected not to recoup the salvage of the plane . . . and instead decided to repair it at a cost of approximately $79,000." In Temple's view, the amount Wright sold the plane for after the accident, $52,500, reflects what a willing buyer would pay and the actual market value of the Citabria after the accident. He then argued that after subtracting $52,500 from the fair market value of the plane before the accident ($75,000), the proper damage amount would be $22,500. He further claimed that interest should only accrue from and after the date the circuit court enters a judgment on damages.

[¶15.]     After considering the record evidence and the parties' submissions, the circuit court issued a memorandum decision. Quoting *Wright I* and other cases from this Court on the proper measure of property damages, the court determined that Wright's compensation would be "the reasonable cost of restoration, unless such cost is greater than the diminution of value . . . in which case the difference in market value before and after the injury [is] the proper measure of damages." *Ward v. LaCreek Elec. Ass'n*, 83 S.D. 584, 593, 163 N.W.2d 344, 349 (citation omitted); *Wright I*, 2021 S.D. 15, ¶ 47, 956 N.W.2d at 452.

[¶16.] In considering these alternative measures for determining damages, the court found the fair market value of the plane before the accident to be $75,000 based on the evidence that Wright listed the plane for sale for that amount and found a willing buyer—Temple. In further reliance on Wright's testimony, the court determined the fair market value of the plane after the accident "is evidenced by the salvage value, which is $3,000." Using these values, the court determined that the diminution in value after the crash was $72,000. Although Wright elected to have the plane repaired at a cost of $79,083.02, because the cost of repair exceeded the plane's diminution in value after the accident, the court concluded that the proper measure of damages under the circumstances would be the difference between the fair market value of the Citabria before and after the accident. The court therefore awarded Wright $72,000 in damages. The court also determined that Wright is entitled to prejudgment interest at the statutory rate from the date of injury to the date of the jury trial on damages was to be held—7 years and 328 days—in the amount of $56,830.68. To this amount, the court added the previously awarded costs in the amount of $2,904.99. The court entered a total judgment in favor of Wright for $131,735.67.

[¶17.] Temple appeals, challenging both the circuit court's damages award and its award of prejudgment interest.

## Analysis and Decision

### *This Court's appellate jurisdiction*

[¶18.] Before examining the issues raised by Temple on appeal, the question whether this Court has appellate jurisdiction must be addressed. While Temple

timely filed his notice of appeal from the circuit court's judgment, his certificate of service did not indicate that third-party defendant Merrill had been served with the notice of appeal and docketing statement. Therefore, on November 29, 2022, this Court issued an order to show cause why the appeal should not be dismissed for failure to serve each party in accord with SDCL 15-26A-4(3).

[¶19.] In his response to the order to show cause, Temple argued that he was not required to serve Merrill with the notice of appeal. He noted that because this Court's remand was limited to the issue of damages between Wright and Temple, Merrill and his counsel did not appear or participate in the remand proceedings. To support his contention that Merrill was no longer a party on remand, counsel for Temple attached an email from Merrill's counsel, dated December 9, 2022, stating the following:

> As we discussed, my client was effectively "dismissed" from the case following the Supreme Court's first opinion on this matter. Because of this, and because you've indicated there is nothing in the appeal that would have any bearing or impact on my client, I do not feel the need to receive copies of any additional appellate briefing that may occur.[1]

[¶20.] This Court, having received no response from Wright, did not resolve the jurisdictional question. Rather, we issued an order taking the jurisdictional issue under advisement and directing the appeal to proceed. The order directed

---

1. Although Temple offered an alternative argument that he had in fact accomplished timely service on Merrill's counsel via his filing of his notice of appeal via Odyssey, we need not address this issue given our determination that Merrill was no longer a party to these proceedings after this Court's remand.

Wright to address the jurisdictional issue in his appellate brief and advised that Temple may respond in his reply brief.

[¶21.] In his brief on appeal, Wright asserts that this Court lacks appellate jurisdiction because Merrill was never dismissed as a party and the notice requirements of SDCL 15-26A-4(3) are mandatory. He further claims that it is immaterial that Merrill did not appear or participate in the proceedings on remand, relying on our decision in *Lake Hendricks Improvement Ass'n v. Brookings County Planning & Zoning Commission*, 2016 S.D. 17, ¶ 5, 877 N.W.2d 99, 101 (dismissing cross-appeal for failure to serve a party even though the party did not appear in circuit court).

[¶22.] Under SDCL 15-26A-4(3), "[t]he appellant, or his or her counsel, *shall serve the notice of appeal and docketing statement on counsel of record of each party* other than appellant, or, if a party is not represented by counsel, on the party at his or her last known address." (Emphasis added.) The "[f]ailure to timely serve and file a notice of appeal is jurisdictionally fatal to the appeal." *In re Reese Trust*, 2009 S.D. 111, ¶ 5, 776 N.W.2d 832, 833. Also, "[i]t is the rule in this state that jurisdiction must affirmatively appear from the record and this Court is required *sua sponte* to take note of jurisdictional deficiencies, whether presented by the parties or not." *In re L.R.*, 2014 S.D. 95, ¶ 5, 857 N.W.2d 886, 887 (quoting *State v. Phipps*, 406 N.W.2d 146, 148 (S.D. 1987)).

[¶23.] In determining who is entitled to service of a notice of appeal and docketing statement, we have specifically rejected the argument that the right "to service of a notice of appeal is contingent upon the party's actual appearance and

participation in the proceedings before the circuit court."[2] *Reese Trust*, 2009 S.D. 111, ¶¶ 14–15, 776 N.W.2d at 836. However, none of our past cases have involved a subsequent appeal after a limited remand from an initial appeal. There is no question that while a new trial on issues concerning liability or other matters in the first appeal could have impacted Merrill given Temple's third-party claims and Merrill's counterclaims, because of the limited scope of our remand in *Wright I*, the matters between Temple and Merrill could not be relitigated; therefore, the determination of damages owed by Temple to Wright would not have any impact on Merrill. *See In re Conditional Use Permit Granted to Van Zanten*, 1999 S.D. 79, ¶ 13, 598 N.W.2d 861, 864 ("When the scope of remand is limited, the entire case is not reopened, but rather, the lower tribunal is only authorized to carry out the appellate court's mandate."). Because our decision in *Wright I* effectively ended any further litigation involving Merrill, Temple was not required to serve Merrill with notice of this second appeal. We thus have appellate jurisdiction.

---

2.    While not dispositive, once Wright and Temple agreed to a procedure for submitting the remaining damages issue to the circuit court on remand, Merrill was dropped from the captions of the pleadings filed thereafter, and the circuit court's orders and judgment likewise identify only Wright and Temple as parties. *See Reese Trust*, 2009 S.D. 111, ¶ 6, 776 N.W.2d at 833–34 (looking to the parties named in the captions on the pleadings and other legal documents in the record below to determine who is a party that must be served); *Lake Hendricks*, 2016 S.D. 17, ¶ 5 n.5, 877 N.W.2d at 102 n.5 (same); *In re Estate of Geier*, 2012 S.D. 2, ¶ 18, 809 N.W.2d 355, 360 (same). However, we have also acknowledged that depending on the nature of the proceedings, the captioning on such documents may not necessarily identify all the parties; therefore, it may be necessary to examine the law governing the particular proceeding to identify the parties entitled to notice. *Reese Trust*, 2009 S.D. 111, ¶ 6, 776 N.W.2d at 834 (examining law on cy pres proceedings to determine who is a party); *Estate of Geier*, 2012 S.D. 2, ¶ 19, 809 N.W.2d at 360 (examining the law governing who must be served in estate litigation).

***The circuit court's damage award***

[¶24.] Temple does not challenge the circuit court's method of calculating damages—subtracting the fair market value of the Citabria after the accident from the fair market value of the plane before the accident. Rather, he contends the court erred in using the salvage value of the Citabria as the fair market value of the plane after the accident. Citing SDCL 10-6-104, a statute applicable to the determination of property values for taxation purposes, Temple claims that the salvage value "was not established at trial as the fair market value of the airplane after the injury" because there was no evidence presented that "the injured airplane was offered for sale in an open market and that it brought a price in money in a fair sale between a willing buyer and a willing seller, each acting prudently and with full knowledge of the relevant facts." In his view, because Wright sold the plane for $52,500 after the accident, this value constitutes the only evidence of the fair market value of the plane after the accident. He thus contends Wright was entitled to $22,500 in damages ($75,000 minus $52,500) and that by using the salvage value of the plane, the circuit court "inflated" the damage award by $49,500.

[¶25.] "[T]he amount of damages to be awarded is a factual issue to be determined by the trier of fact." *Peska Props., Inc. v. N. Rental Corp.*, 2022 S.D. 33, ¶ 20, 976 N.W.2d 749, 755 (alteration in original) (citation omitted). We review fact findings for clear error, and as such, the circuit court's "findings on damages will not be disturbed on appeal unless they are clearly erroneous." *Id.* (citation omitted). "In applying this standard, we will overturn the findings of the trial court only when, after review of all the evidence, we are left with a definite and firm conviction

that a mistake has been made." *Id.* (quoting *Tri-State Refin. & Inv. Co. v. Apaloosa Co.*, 452 N.W.2d 104, 109 (S.D. 1990)).

[¶26.] "We have said that 'the ultimate purpose behind allowance of damages for breach of contract is to place the injured party in the position he or she would have occupied if the contract had been performed, or to "make the injured party whole."'" *Wright I*, 2021 S.D. 15, ¶ 42, 956 N.W.2d at 449 (quoting *Stern Oil Co. v. Brown*, 2018 S.D. 15, ¶ 16, 908 N.W.2d 144, 151). "In estimating the damage to property, . . . the value of such property to the owner is deemed to be its market value at the time and in the market nearest to the place where it was located at the time of the damage." SDCL 21-1-6.

[¶27.] Although as noted by Temple, "fair market value" and "salvage value" may be defined differently, either value may be used, depending on the circumstances, to show the diminution in value of an item of property after it has been damaged. Salvage value is defined as "[t]he value of an asset after it has become useless to the owner; the amount expected to be obtained when a fixed asset is disposed of at the end of its useful life." *Black's Law Dictionary* (11th ed. 2019). Fair market value is defined as "[t]he price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction; the point at which supply and demand intersect." *Id.* In cases in which an item of property is so damaged that it can no longer be used, its diminution in value is determined by subtracting the salvage value from the fair market value before it was damaged. *See* 22 Am. Jur. 2d *Damages* § 295 (updated 2023).

[¶28.] Here, although the extensive damage to the plane rendered it useless, Wright elected to repair it. Therefore, this case presents a scenario where alternative measures of damages could be considered, and determining which measure is most appropriate is dependent on the particular facts of each case. Because Wright's $79,083 repair costs exceeded the diminution in the plane's value resulting from the crash, the circuit court did not err by declining to apply the cost of repair measure of damages. *See Rupert v. City of Rapid City*, 2013 S.D. 13, ¶ 27, 827 N.W.2d 55, 66 (citation omitted) (providing that using the cost of repair damages is appropriate "unless such cost is greater than the diminution in value"); *Lamb v. Winkler*, 2023 S.D. 10, ¶ 19, 987 N.W.2d 398, 405 (same). Instead, the court calculated Wright's damages by determining the difference between the fair market value of the plane prior to the crash and the salvage value that could have been recouped had the repairs not been undertaken.

[¶29.] Temple's suggestion that rather than subtracting the salvage value when calculating the diminution in the plane's fair market value, the court should have subtracted the $52,500 sale price Wright received for the plane *after it was repaired* only makes sense when applying the cost of repair measure of damages.[3]

---

3. In addition to the necessity of considering the cost of repair when determining the alternative measure of damages, when applying this measure of damages, it is questionable whether the $52,500 Wright received from the sale of the plane after it was repaired truly represents its fair market value. This Court has approved a jury instruction defining fair market value of personal property as "what a willing seller, *under no compulsion to sell*, and a willing buyer, under no compulsion to buy, would arrive at as the purchase price of the [item]." *Rensch v. Riddle's Diamonds Rapid City, Inc.*, 393 N.W.2d 269, 273 (S.D. 1986) (emphasis added). Wright's unopposed testimony that he sold the repaired plane to "stop the bleeding" indicates that he felt compelled to sell it.

This measure must include compensation not only for the diminution in value after repair but also the amount reasonably expended for the repair. In the case at hand, such a calculation would result in a *higher* damages award than the one Temple is challenging in this appeal.[4] Given the facts presented, the circuit court did not err in the method it chose to calculate Wright's damages.

### The circuit court's decision to award prejudgment interest

[¶30.] Temple contends that the circuit court erred in awarding prejudgment interest because, in his view, the damages were uncertain until the circuit court decided the damages issue on remand.[5] However, under SDCL 21-1-13.1, a person entitled to damages "is entitled to recover interest thereon from the day that the loss or damage occurred, except during such time as the debtor is prevented by law, or by act of the creditor, from paying the debt." When applying this statute, this Court has made clear that "South Dakota statutes require an award of prejudgment interest on compensatory damages, calculated 'from the day that the loss or damage occurred[.]'" *JAS Enters., Inc. v. BBS Enters., Inc.*, 2013 S.D. 54, ¶ 45, 835 N.W.2d 117, 129 (alteration in original) (quoting SDCL 21-1-13.1). Therefore, "[p]rejudgment interest is now mandatory, not discretionary[,]" and the circuit court

---

4. When adding the difference between the fair market value of the plane before the crash and the amount for which it sold after being repaired ($75,000 minus $52,500) to the cost of repair ($79,083.02), the damages award would be $101,583.02.

5. Temple relies on SDCL 21-1-11. However, this statute was repealed in 2014. And even if the statute had not been repealed, it would not apply in this case because under SDCL 21-1-13.2, "[t]he provisions of § 21-1-13.1 apply to any suit commenced on or after July 1, 1990. The provisions of §§ 21-1-11 and 21-1-13 apply to any suit commenced before July 1, 1990." Wright commenced suit after July 1, 1990.

properly awarded Wright prejudgment interest from the date the damage occurred.

*See Alvine v. Mercedes–Benz of N. Am.*, 2001 S.D. 3, ¶ 29, 620 N.W.2d 608, 614.

[¶31.]     Affirmed.

[¶32.]     JENSEN, Chief Justice, and KERN, SALTER, and MYREN, Justices,

concur.